*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0160**

State of Minnesota,
Respondent,

vs.

John Michael Ryan,
Appellant.

**Filed January 22, 2024
Affirmed in part, reversed in part, and remanded
Schmidt, Judge**

Itasca County District Court
File No. 31-CR-21-2991

Keith Ellison, Attorney General, Jacob Campion, Assistant Attorney General, St. Paul, Minnesota; and

Matti R. Adam, Itasca County Attorney, Grand Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Adam Lozeau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Ross, Judge; and Schmidt, Judge.

**SCHMIDT**, Judge

In this appeal from the final judgment of conviction for fleeing police in a motor vehicle, criminal damage to property, criminal vehicular operation, and driving while impaired, appellant John Michael Ryan argues that the evidence does not sufficiently support the jury's guilty verdicts, contends that he was denied his right to a speedy trial, and contends that the jury rendered inconsistent verdicts. We affirm the final judgment of conviction. But because the district court erred by imposing three sentences based on a single behavioral incident, we reverse and remand for resentencing.

## FACTS

At approximately 6:00 a.m. on December 6, 2021, Ryan—driving a white Durango—called police to report that people "were snooping around [his] house" and trucks were "systematically hounding [him]." Ryan told the dispatcher that a corporation has been "illegally testing [him] at the exam complexity lab," and claimed "a bunch of scientists . . . are watching me like a little rat[.]" The dispatcher remained on the phone until Ryan said he was okay.

The dispatcher requested law enforcement to check on Ryan. A police officer located Ryan and followed him to assess his driving. The officer did not stop Ryan because he was not driving erratically and no concerned citizen had requested a welfare check.

At 8:20 a.m. that same morning, an off-duty dispatcher saw a vehicle in his front yard, within eight to ten feet of the house. The off-duty dispatcher noted the vehicle had "come off the street, come through a snow-covered boulevard, a grass boulevard, over the

sidewalk and up into [his] yard and there was roughly 18 inches to two feet of snow in that boulevard area." The off-duty dispatcher called the dispatch center and gave the license-plate number of the vehicle, which matched Ryan's vehicle. Ryan drove away before law enforcement could respond.

Two other officers—Sergeant Ryan Gunderson and Officer Samantha Perry—spotted a white SUV. Officer Gunderson checked the license plate and confirmed the vehicle belonged to Ryan. Officer Gunderson briefly spoke to Ryan and decided to take him to be evaluated at a hospital. Ryan became upset, said he did not want to go to the hospital, and stated "he believes the hospital illegally takes his blood from him." Officer Perry moved her squad car to try to prevent Ryan from leaving. As Officer Perry moved her car, Ryan put his vehicle in reverse, backed into the squad car, and then sped away.

Officer Perry activated her vehicle's emergency lights and followed Ryan. Since the road Ryan drove down looped around, Officer Perry stopped at the start of the loop and tried to block the road. As Ryan returned from the loop, he did not appear to slow down. Officer Perry had to move her squad car "out of the way to avoid an accident."

Officer Gunderson then began following Ryan who was "traveling at a high rate of speed." Ryan turned northbound on an unplowed road. Deputy Jayme Williams and Deputy Derek Hanson—driving in separate squad cars with Deputy Hanson 100-150 feet behind Deputy Williams—drove southbound towards Ryan. As Ryan approached, Deputy Williams pulled into a driveway. Deputy Hanson saw Ryan veer in the direction of Deputy Williams's patrol vehicle, "nearly colliding" with it. Ryan then drove his SUV towards Deputy Hanson. Deputy Hanson tried to back up the squad car, but Ryan crashed into the

3

passenger side of Deputy Hanson's vehicle. As a result of the collision, Deputy Hanson suffered a concussion, lower back strain, and bruised ribs.

On the way to the hospital after his arrest, Ryan apologized multiple times for the collision. Law enforcement obtained a warrant for Ryan's blood, which tested positive for methamphetamine and amphetamine.

A crash reconstruction specialist investigated. The airbag control module in Deputy Hanson's squad showed that five seconds before the collision, the squad was in reverse. The control module in Ryan's vehicle showed that five seconds before the collision, the SUV was going 51 miles per hour. When the airbag deployed, Ryan's SUV was traveling approximately 30 miles per hour.

Respondent State of Minnesota charged Ryan, by amended complaint, with eight counts: one count of second-degree assault, two counts of fleeing a peace officer, two counts of first-degree criminal damage to property, two counts of criminal vehicular operation, and one count of fourth-degree driving while impaired. Ryan applied for a public defender, but his application was denied.

On December 22, 2021, the state requested a rule 20 competency evaluation and Ryan, representing himself, did not object. The evaluator concluded Ryan was incompetent to proceed and Ryan asked the court to "affirm" that conclusion. The district court found Ryan incompetent. Following treatment, on July 14, 2022, the district court found Ryan competent to proceed and the prosecution resumed.

On August 10, 2022, Ryan requested to waive his right to an attorney. At a hearing on August 12, Ryan entered not-guilty pleas to all counts and demanded a speedy trial. On September 2, the district court, with Ryan's consent, appointed advisory counsel.

A jury trial was held on October 3-5, 2022. At trial, the jury heard testimony from the officers and deputies involved in the incident as well as the crash reconstruction specialist. The jury also watched footage from police body cameras and squad cars. Ryan testified in his own defense that the collision was not his fault as he believed Deputy Hanson was "playing chicken" with him and was going to "ram" Ryan's SUV.

The jury found Ryan not guilty of second-degree assault and guilty of the remaining seven charges. The district court sentenced Ryan to 12 months and one day in prison for fleeing police (count 3), 15 months for first-degree criminal damage to property (count 5), and 13 months for criminal vehicular operation (count 11), to be served concurrently.

Ryan appeals.

## DECISION

On appeal, Ryan raises issues of: (1) insufficient evidence for his first-degree criminal-damage-to-property conviction, (2) a speedy-trial violation due to the 301-day delay between his arrest and the commencement of the trial, (3) legally inconsistent verdicts as to his criminal-damage-to-property and criminal-vehicular-operation convictions, and (4) a sentencing error for imposing three sentences for offenses that occurred within a single behavioral incident. We address each argument in turn.

**I.     The record evidence sufficiently proved that Ryan intentionally damaged Deputy Hanson's vehicle.**

Ryan argues his convictions for first-degree criminal damage to property must be reversed because the evidence did not prove he intentionally damaged Deputy Hanson's vehicle.  Ryan contends there is a rational hypothesis that the collision was an accident.

Criminal damage to property requires proof that the defendant "intentionally cause[d] damage to physical property of another."   Minn. Stat. § 609.595, subd. 1(2) (2020).  "Intentionally" means "the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result."  Minn. Stat. § 609.02, subd. 9(3) (2020).

When evaluating the sufficiency of the evidence, "[we] carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted."   *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted).  We view the evidence in the light most favorable to the verdict, and assume the jury disbelieved any evidence that conflicted with the verdict.  *Id.*

The parties agree that the circumstantial-evidence standard applies in this case.  We conduct a two-step analysis when evaluating the sufficiency of circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013).  First, we identify the circumstances proved.  *Id.*  In doing so, we "consider only those circumstances that are consistent with the verdict." *Id.* at 599.  We assume the jury believed the state's witnesses and disbelieved the defense's witnesses.  *Id.*  Second, we "determine whether the circumstances proved are

consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). In doing so, we independently examine "the reasonable inferences that can be drawn from the circumstances proved." *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017). "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010).

Viewing the evidence in the light most favorable to the verdict, the circumstances proved at trial are: (1) Ryan fled from the police on an unplowed, snow packed road; (2) Ryan had amphetamine and methamphetamine in his system; (3) Ryan drove directly at Officer Perry's squad car—with the emergency lights activated—with no attempt to slow or stop the SUV; (4) Officer Perry was forced to move her squad car out of the way to avoid being hit by Ryan; (5) Ryan drove in the center of the road, saw Deputy Hanson driving toward him, and Ryan continued driving towards Deputy Hanson at 51 miles per hour; and (6) Deputy Hanson reversed his squad car and began moving forward when Ryan collided with the squad car's passenger side at 30 miles per hour.

Having established the circumstances proved, we next consider whether those circumstances are consistent with guilt and inconsistent with any rational hypothesis other than guilt. *Silvernail*, 831 N.W.2d at 599. The parties do not dispute that the circumstances proved are inconsistent with guilt. But Ryan argues that these circumstances are also consistent with the rational hypothesis that the collision was an accident. We disagree.

7

The hypothesis posed by Ryan is not rational given the circumstances proved. The circumstances proved are that Ryan saw Deputy Hanson in front of him, continued driving toward Deputy Hanson at 51 miles-per-hour, described the situation as "playing chicken," and then collided with the squad car. This occurred moments after another officer had to move her car out of Ryan's path to avoid being hit. It is not reasonable to believe that Ryan unintentionally hit the squad car when considering the other intentional acts Ryan engaged in before the collision. Moreover, Ryan's own testimony contradicts the hypothesis he raises on appeal. Ryan testified he was "playing chicken" with Deputy Hanson, not that he lost control of his vehicle such that the collision was an accident.[1]

We conclude the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt.

## II. Ryan was not denied his constitutional right to a speedy trial.

Ryan argues his convictions must be reversed because he was denied his constitutional right to a speedy trial.

---

[1] Ryan analogizes his circumstances to *State v. Magee* in which this court reversed a conviction for damage to property where there was a reasonable possibility that the defendant inadvertently caused the damaged by driving carelessly. No. A18-1839, 2020 WL 1676633, *2-3 (Minn. App. Apr. 6, 2020). This nonprecedential case is neither binding, nor persuasive. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c) (nonprecedential cases are nonbinding authority but may be included for persuasive value). In *Magee*, the circumstances proved demonstrated that Magee put the car in reverse, floored the gas pedal, sped down the driveway, hit the neighbor's fence, and damaged the neighbor's lawn. *Magee*, 2020 WL 1676633, at *2. This court determined that the circumstances proved established a reasonable inference inconsistent with guilt because Magee drove too fast in reverse and the state failed to present any evidence that Magee knew the fence was there. *Id.* at *3. In contrast, the circumstance proved here show that Ryan knew Deputy Hanson was in front of him, yet Ryan continued toward Deputy Hanson at a high rate of speed in snowy conditions.

Under the United States and Minnesota Constitutions, a criminal defendant has the right to a speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. The speedy-trial right protects against "undue and oppressive" pretrial incarceration, reduces the "anxiety and concern accompanying public accusation," and avoids delay that may impair the accused's ability to present a defense. *State v. Jones*, 977 N.W.2d 177, 190 (Minn. 2022) (quotation omitted).

Whether a defendant has been denied the constitutional right to a speedy trial is a question we review de novo. *Id.* In doing so, we consider a "nonexclusive" list of factors articulated by the United States Supreme Court: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted the right, and (4) any prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972). These factors are not "a check-the-box, prescriptive analysis," and no single factor is necessary or independently sufficient to show deprivation of the right to a speedy trial. *State v. Mikell*, 960 N.W.2d 230, 245 (Minn. 2021). Rather, we carefully balance these factors, in the context of the particular case, to determine whether the delay "endanger[ed] the values that the right to a speedy trial protects." *State v. Paige*, 977 N.W.2d 829, 837 (Minn. 2022) (quotation omitted).

We briefly summarize the procedural background before addressing the *Barker* factors.

### A. Procedural background.

The state filed the initial complaint on December 8, 2021. At his first appearance, the court set bail, and Ryan—who appeared pro se—requested a hearing within 14 days.

9

On December 22, 2021, Ryan, again appearing pro se, demanded a speedy trial. The state requested a rule 20 competency evaluation. Ryan did not object. The district court ordered a competency examination to be completed within 60 days.

A licensed psychologist submitted the report on February 21, 2022—one-day prior to the 60-day deadline—and found Ryan incompetent to proceed to trial. During a March 16, 2022 hearing, Ryan requested the district court to "affirm" the examiner's conclusion that he was incompetent. The court found Ryan incompetent and suspended the matter for six months pursuant to Minn. R. Crim. P. 20.01, subd. 6(b).

On July 5, 2022, an evaluator from the treatment facility filed a report recommending that Ryan was competent to proceed. On July 14, 2022, the district court found Ryan competent. Ryan requested an omnibus hearing within 28 days.

At the August 10, 2022 hearing, Ryan asked to waive his right to an attorney and to proceed to a speedy trial. At hearings on August 10 and 12, 2022, the district court reviewed Ryan's rights, then Ryan entered not-guilty pleas and demanded a speedy trial.

At a hearing on September 2, 2022, the district court appointed advisory counsel. A week before trial, Ryan filed a motion to dismiss, arguing that his right to a speedy trial had been violated. On October 3, 2022, the first day of trial, the district court denied Ryan's motion to dismiss. The district court explained:

> Mr. Ryan made a request for a speedy trial at the December 22nd hearing. . . . [T]here's two things that a Judge evaluates or that I evaluate, there's your constitutional right to a speedy trial, which is a general right with regard to using reasonable diligence to get a trial in, and then there's a time period outlined by the rules, so 60 days. The rules are very specific about when those 60 days start. The 60 days starts at

10

the later of—whatever's later, an entry of a not guilty plea or the speedy trial demand. So early in December—or December 22nd early on in this process, there was no entry of a not guilty plea and in fact that typically doesn't happen or can't happen until an omnibus hearing. . . . On the Rule 20 evaluation, a process occurred. . . . I found him competent and then we set it for an omnibus hearing on August 10th. We started that August—that omnibus hearing on August 10th. I continued it to two days later so that I could have the waiver— written waiver and at that time again on August 12th Mr. Ryan made a speedy trial demand. At that time he had entered a not guilty plea and waived his right to omnibus and so I think at that time, either August 10th or August 12th, the clock started with regard to the 60 days and so I do believe that we're complying with his rights under the rules for a speedy trial within 60 days and I do believe that we are just complying with his general constitutional right to a speedy trial given that things have occurred in a reasonable time frame.

## B. The *Barker* factors.

### 1. The length of the delay.

The first factor can be viewed as a triggering mechanism in the sense that, until a delay is presumptively prejudicial, there is no need to examine the other three *Barker* factors. *Paige*, 977 N.W.2d at 837-38. A trial delayed more than 60 days past a defendant's speedy-trial demand is "presumptively prejudicial," meaning a court must consider the other three *Barker* factors. *Id.* at 838.

Because more than 60 days passed between Ryan's initial speedy-trial-demand and trial, we must analyze the other factors.

### 2. The reasons for the delay.

We next consider which party bears responsibility for the delay and what weight to assign this factor based on the reason. *Paige*, 977 N.W.2d at 838. Courts will not find a

11

speedy-trial violation when the delay is for a good cause. *State v. Griffin*, 760 N.W.2d 336, 340 (Minn. App. 2009). Deliberate attempts by the state to "hamper the defense" weigh heavily against the state, while more neutral reasons such as negligence and court congestion weigh less heavily. *Mikell*, 960 N.W.2d at 251.

A delay caused by a rule 20 evaluation of a defendant's mental competency is a relevant consideration as to whether a speedy-trial violation has occurred. *State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005). Courts generally consider a delay caused by competency proceedings to be justified as necessary to protect the defendant's right to a fair trial. *See, e.g.*, *State v. Bauer*, 299 N.W.2d 493, 498 (Minn. 1980).

Ryan contends we should attribute the delays in his rule 20 proceedings and the scheduling of his trial to the state.[2] We disagree for three reasons. First, Ryan did not object to a rule 20 competency evaluation. The prosecutor appropriately protected Ryan's rights—at a time when Ryan was proceeding pro se—by requesting an evaluation, which determined Ryan to be incompetent. Second, after the evaluator found Ryan incompetent, Ryan asked the district court to "affirm" that finding. Third, once an evaluator found Ryan to be competent to proceed to trial, the district court promptly scheduled hearings and set

---

[2] Ryan relies on information from his civil-commitment file to challenge the alleged delays before his admission to the treatment center and after he completed treatment. However, this file is not part of the record, and we may not base our decision on matters outside of the record on appeal. *See State v. Taylor*, 650 N.W.2d 190, 204 n.12 (Minn. 2002).

a trial within 60 days from Ryan's not-guilty plea and renewal of his speedy-trial demand.[3] This factor does not weigh in favor of either party.

### 3. Ryan's demand for a speedy trial.

For the third *Barker* factor, we consider the frequency and force of the demand. *Paige*, 977 N.W.2d at 840. "[T]he strength of the demand is likely to reflect the seriousness and extent of the prejudice which has resulted." *Id.* (quotation omitted).

This factor weighs in Ryan's favor because he asserted his right to a speedy trial and moved to dismiss for a violation of that right. But because Ryan did not object to the rule 20 proceedings, asked the district court to "affirm" the incompetency finding, and raised no issues regarding his post-competency scheduling of hearings or trial, this factor does not weigh heavily against the state.

### 4. Any prejudice suffered by Ryan.

This court considers three interests when assessing the prejudice factor: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired." *State v. Taylor*, 869 N.W.2d 1, 20 (Minn. 2015) (quotation omitted). The third interest is the "most serious." *Jones*, 977 N.W.2d at 192.

Ryan does not expressly argue that any of these three considerations are met in this case. Instead, he contends we should declare the delays to be "excessive." But had the

---

[3] Ryan also relies on *State v. Jones*, 392 N.W.2d 224 (Minn. 1986), to argue the district court erred by failing to schedule his trial within 60 days of his arrest. But the supreme court's decision in *Jones* applied to calculating the length of the delay for the first *Barker* factor, not the commencement of the 60-day period under rule 11.09.

state pushed forward with prosecuting Ryan in December 2021, Ryan may have faced a trial when he was not competent to proceed. And after the evaluator concluded that he was incompetent, Ryan requested that the district court "affirm" that determination. The district court honored Ryan's request and he received treatment. Once Ryan was restored to competency, the district court swiftly moved the case to trial.

As for the most serious interest, Ryan does not point to how the delay impaired his defense. Our review of the record similarly demonstrated no impairment of Ryan's defense due to the delay. The prejudice factor weighs against Ryan.

### C. Balancing the *Barker* factors.

Finally, we conduct "the delicate and sensitive balancing required to answer" whether the state brought Ryan to trial "quickly enough so as not to endanger the values that the speedy trial right protects." *Mikell*, 960 N.W.2d at 255. After carefully considering the *Barker* factors, we conclude that Ryan was not deprived of his right to a speedy trial. The record does not demonstrate that the state was at fault for the delay caused by the rule 20 proceedings, and after Ryan was found competent the trial occurred within 60 days of his subsequent not-guilty plea and his speedy-trial demand. The record also does not demonstrate—and Ryan does not assert—that the delay impaired his defense. Based upon this record, we conclude that Ryan's speedy-trial rights were not violated.

**II.** **The district court did not err by accepting guilty verdicts on the criminal-damage-to-property and criminal-vehicular-operation charges.**

Ryan argues his convictions for first-degree criminal damage to property and criminal vehicular operation are legally inconsistent. We review alleged inconsistent verdicts de novo. *State v. Leake*, 699 N.W.2d 312, 325 (Minn. 2005).

The Minnesota Supreme Court has reversed convictions where the verdicts were legally inconsistent. *State v. Moore*, 458 N.W.2d 90, 94-95 (Minn. 1990) (reversing and remanding for a new trial in part because guilty verdicts for both first-degree premeditated murder and second-degree manslaughter were inconsistent). "Verdicts are legally inconsistent when proof of the elements of one offense negates a necessary element of another offense." *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996).

Ryan contends that the conviction for property damage required the jury to find that he intentionally caused the collision. *See* Minn. Stat. § 609.595, subd. 1(2) (stating a person is guilty of first-degree criminal damage to property if they "intentionally cause[] damage to physical property of another without the latter's consent"). Ryan contends the conviction for criminal vehicular operation required the jury to find he operated the vehicle negligently or in a grossly negligent manner. *See* Minn. Stat. § 609.2113, subd. 2(6) (2020) (stating a person is guilty of criminal vehicular operation resulting in substantial bodily harm if they operate a motor vehicle "in a negligent manner while any amount of controlled substances listed in Schedule I or II . . . is present in the person's body"). Ryan contends the "intentional" element of first-degree damage to property cannot coexist with the "negligence" element for criminal vehicular operation.

15

Ryan analogizes this situation to *Moore*. In that case, the supreme court determined that the verdicts were legally inconsistent because the jury had to have found that Moore "acted with premeditation and intent to kill" to find him guilty. *Moore*, 458 N.W.2d at 93-94. Whereas the second-degree manslaughter verdict required the jury to find Moore caused the death "by culpable negligence." *Id.* The supreme court could not "reconcile the jury's findings that defendant caused the death of his wife with premeditation and intent and at the same time caused that death through negligence or reckless conduct." *Id.* at 94.

The state argues *Moore* is distinguishable because the mens rea elements of criminal damage to property and criminal vehicular operation do not negate each other. We agree. The jury could have found that Ryan had a controlled substance in his body and then negligently operated the vehicle by fleeing police, driving directly at Officer Perry, or traveling down unplowed roads at excessive speeds. The jury also could have concluded that Ryan intentionally hit Deputy Hanson's vehicle. The fact that Ryan operated his vehicle negligently with a controlled substance in his body did not preclude the jury from also concluding Ryan intended to hit Deputy Hanson's vehicle.

The district court committed no error by accepting guilty verdicts on the criminal-damage-to-property and criminal-vehicular-operation charges.

III. **The district court erred by imposing multiple sentences for offenses that were part of a single behavioral incident.**

Ryan argues that the district court erred by imposing three sentences for three convictions that arose from the same behavioral incident. He requests his sentence for criminal vehicular operation be reversed.

16

"[M]ultiple sentences for multiple offenses committed as part of the same behavioral incident are prohibited." *State v. Barthman*, 938 N.W.2d 257, 265 (Minn. 2020). Whether offenses occurred as part of the same behavioral incident is a mixed question of law and fact. *Id.* We review the findings of fact for clear error and application of the law de novo. *Id.*

At sentencing, the state conceded that the three convictions—fleeing, damage to property, and criminal vehicular operation—all arose from the same behavioral incident. The state argued, however, that the statutory exception for fleeing permitted the district court to impose three sentences. *See* Minn. Stat. § 609.035, subd. 5 (2020). The district court agreed and convicted and sentenced Ryan to 12 months and one day in prison for fleeing a police officer (count 3), 15 months for first-degree criminal damage to property (count 5), and 13 months for criminal vehicular operation (count 11).

Ryan argues, and the state now concedes, that the fleeing exception authorized sentences for fleeing and only the most serious remaining offense, which, in this case, was first-degree criminal damage to property. We agree. Subdivision 5 of section 609.035 authorizes one sentence for Ryan's conviction for fleeing the police and, even though it arose from the same behavioral incident, one sentence for first-degree criminal damage to property. The fleeing exception does not authorize a third sentence. We reverse the imposition of the three sentences and remand for the district court to vacate Ryan's sentence for criminal vehicular operation.

**Affirmed in part, reversed in part, and remanded.**