OPINION
HUDSON, Justice.
Following a jury trial, appellant Diamond Lee Jamal Griffin was convicted of first-degree felony murder, Minm.Stat, § 609.185(a)(3) (2014), in connection with the shooting death of Francisco Benitez-Hernandez.[1] On appeal, Griffin contends the district court committed reversible error when it admitted Spreigl evidence and when it denied his motion for a mistrial. He also claims that the State failed to present sufficient evidence to prove, he intentionally killed Benitez-Hernandez. In a supplemental pro se brief, Griffin raises a number of other claims. Because (1) there is no reasonable possibility that the Spreigl evidence significantly affected the verdict; (2) the district court did not abuse its discretion when it denied Griffin’s mo *260 tion for a mistrial; (3) the State’s evidence was sufficient to prove Griffin intentionally killed Benitez-Hernandez; and (4) Griffin’s pro se claims lack merit, we affirm his conviction.
On the night of July 8, 2013, Griffin, his girlfriend K.F., and his childhood friend Ryan Grant drove to an apartment complex in south Minneapolis. About two weeks earlier, Griffin and Grant had jointly purchased a .22 semiautomatic pistol. Griffin and Grant left KF.’s car with the pistol and tried to rob a man who was walking down the street. As part of the robbery attempt, Grant hit the man in the head with the pistol. The man ran away.
After the unsuccessful robbery, Griffin and Grant walked down a nearby alley until they reached the backyard of 3629 Columbus Avenue South, which was the home of Francisco Benitez-Hernandez and L.B-H. Benitez-Hernandez, L.B-H., and their brother-in-law P.Y-E. were in the backyard sitting at a table drinking beer. As Griffin and Grant entered the backyard, Griffin aimed the pistol at Benitez-Hernandez. When Griffin demanded money, Benitez-Hernandez said they had no money. Griffin then hit Benitez-Hernan-dez with the gun in the head above his eyebrow, causing Benitez-Hernandez to bend over and hold his bleeding head. L.B-H. stood up and threw a beer bottle at Griffin in an effort to distract him. Griffin ducked out of the way, fell backward, caught himself, and then “turned around and ... fired at [L.B-H.].” The bullet struck L.B-H. just above the elbow of his left arm. As L.B-H. ran to get help, Benitez-Hernandez grabbed Griffin’s leg. Griffin redirected the pistol at Benitez-Hernandez’s chest and fired a shot. The bullet penetrated Benitez-Hernandez’s chest, fatally wounding him. Griffin and Grant fled the scene before the police arrived.
Although the police did not find a firearm at the scene, they found two spent cartridge casings in the backyard near Benitez-Hernandez’s body. Police also located two cell phones in the yard, one belonging to L.B-H., and the other belonging to P.Y-E. L.B-H. described the robbers as two black men in white t-shirts. Based on the statements of witness J.M., a resident of a nearby apartment building, police searched that apartment building’s parking lot and found an identification card belonging to Griffin’s girlfriend, K.F. Police also located a take-out food container and a fork near the identification card that were later determined to have K.F.’s DNA on them.
Police located K.F. on July 9, 2013 and spoke to her twice that day, once at her place of employment and again at the police department. She was hesitant to speak with the police but eventually told them that she had been with Griffin on the day of the killing. Also on July 9, police stopped K.F.’s car with Griffin and Grant inside. Griffin was driving and Grant was in the passenger seat. The police arrested the men and seized Griffin’s clothing, including a white tank top, a belt, jean shorts, and black Nike shoes. The police seized Grant’s shoes and a cell phone. The police also executed a search warrant at Grant’s home where they seized a white t-shirt, a white tank top, and black shorts with a white stripe.
The items the police collected at the scene and the clothes and shoes seized from Griffin and Grant were sent to the Minnesota Bureau of Criminal Apprehension (BCA) for forensic testing. The serol-ogist found a blood spot on Griffin’s left shoe and a blood spot on his right shoe. The serologist also found blood on four areas of the jean shorts belonging to Griffin. No blood was found on Griffin’s shirt or belt, or on the t-shirt, tank top, shorts, *261 or shoes taken from Grant. The blood found on Griffin’s clothing and shoes matched Benitez-Hernandez’s DNA. The spent casings found in the backyard of 3629 Columbus Avenue South were all fired from the same gun, ,a .22 semiautomatic pistol. With Grant’s help, the police recovered the .22 semiautomatic pistol used in the shooting in August 2014 from a person identified as D.D. Testimony by the investigating officer established that a semiautomatic pistol requires a person “to pull the trigger for each round that you fire.”'
Grant pleaded guilty as an accomplice to three crimes: the felony murder of Benitez-Hernandez, the attempted second-degree murder of L.B-H., and the aggravated robbery of P.Y-E. In exchange for assisting the police in locating the gun and for testifying against Griffin at trial, Grant received a reduced sentence of 234 months in prison.
A Hennepin County grand jury returned an indictment charging Griffin with six offenses. The first count alleged the offense of first-degree felony murder (Beni-tez-Hernandez), Minn.Stat. § 609.185(a)(3). The second count alleged the offense of second-degree intentional murder (Benitez-Hernandez), Minn.Stat. § 609.19, subd. 1(1) (2014). The third count alleged the offense of attempt, Minn. Stat. § 609.17 (2014), in which the uncompleted offense was first-degree felony murder (L.B-H.), Minn.Stat. § 609.185(a)(3). The fourth count alleged the offense of attempt, Minn.Stat. § 609.17, in which the uncompleted offense was second-degree intentional murder (L.B-H.), Minn.Stat. § 609.19, subd. 1(1). The fifth count alleged the offense of second-degree assault (P.Y-E.), Minn.Stat. § 609.222, subd. 1 (2014). The sixth count alleged the offense of aggravated robbery (P.Y-E.), Minn.Stat. § 609.245, subd. 1 (2014). Griffin pleaded not guilty to each of the charges.
At the jury trial, the State presented evidence consistent with the facts outlined above. Over Griffin’s objection, the district court allowed the' State to present Spreigl evidence of a 2008 incident. In addition, when the prosecutor asked Griffin’s girlfriend “Do you remember telling your boss that you thought your boyfriend killed somebody?” Griffin objected and moved for a mistrial. The district court sustained the objection, provided the jury a curative instruction, and denied the mistrial motion. The jury returned a not guilty verdict on Count 6 and guilty verdicts on Counts 1, 3, and 5. The district court sentenced Griffin to life in prison on Count-1; to 153 months in prison on Count 3, to be served consecutively to Count 1; and to 36 months in prison on Count 5, to be served consecutively to Counts 1 and 3. Griffin now appeals.
I.
Griffin argues the district court committed reversible error when it admitted the 2008 Spreigl evidence.[2] Specifically, he contends the State failed to articulate a valid purpose for admitting the Spreigl evidence, and that any probative value of the Spreigl evidence was outweighed by the risk of unfair prejudice.
A district court’s decision to admit Spreigl evidence is reviewed for an abuse of discretion. State v. Rossberg, 851 N.W.2d 609, 615 (Minn.2014). A defendant who claims the trial court erred in admitting evidence bears the. burden of showing an error occurred and any resulting prejudice. State v. Campbell, 861 *262 N.W.2d 95, 102 (Minn.2015). If an appellate court determines that the district court erroneously admitted Spreigl evidence, the court must then determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. State v. Bolte, 530 N.W.2d 191, 198 (Minn.1995).
At trial, the State called O.R-H., who testified that on January 3, 2008, he was walking to work and was at First Avenue and 27th Street in Minneapolis when he noticed two men walking behind him. Approximately one block later, one of the men ran up behind him. When O.R.-H, turned around, the man punched him in the nose and rummaged through his jacket and pants pockets for money. O.RH. was unable to make an in-court identification. The State then called Officer Keia Pettis, who testified that on January 3, 2008, during a show-up identification procedure, O.R-H identified Griffin as the person who. attempted to rob him.
We need not decide whether the district court erred in admitting the Spreigl evidence because, even if we assume that the evidence was erroneously admitted, there is no reasonable possibility that the Spreigl evidence significantly affected the verdict. The district court gave the jury a cautionary instruction regarding the permissible use of Spreigl evidence and we presume that the jurors followed the district court’s instruction. State v. Clark, 755 N.W.2d 241, 261 (Minn.2008) (explaining that any concerns regarding the prejudicial impact of the Spreigl evidence were minimized by the cautionary instruction on the permissible use of Spreigl evidence because we presume that jurors followed the court’s instructions). Moreover, the evidence of Griffin’s guilt was considera^ ble.[3] The DNA evidence strongly suggested that Griffin was the shooter because Benitez-Hernandez’s blood was on Griffin’s shoes and shorts, and none of Beni-tez-Hernandez’s blood was on Grant’s shoes or clothing. Thus, even if the district court erred in admitting the Spreigl evidence, there is no reasonable possibility that the evidence significantly affected the verdict.
II.
Griffin also argues that the district court committed reversible error when it denied his motion for a mistrial. The denial of a motion for a mistrial is reviewed for an abuse of discretion. State v. Jorgensen, 660 N.W.2d 127, 133 (Minn.2003). A mistrial should be granted only if there is a reasonable probability, in light of the entirety of the trial including the mitigating effects of a curative instruction, that the outcome of the trial would have been different had the incident resulting in the motion not occurred. State v. Manthey, 711 N.W.2d 498, 506-07 (Minn.2006). The trial judge is in the best position to determine whether an error is sufficiently prejudicial to require a mistrial or whether another remedy is appropriate. Id. When a court instructs a jury to disregard an improper question, we presume the jurors followed the instruction. State v. Pendleton, 706 N.W.2d 500, 509 (Minn.2005).
On direct examination, the following exchange occurred between the prosecutor and Griffin’s girlfriend:
Q: And do you remember confiding, telling your boss some concern that you had?
A: Yes.
*263 Q: What was-it that you told.your boss?
A: Well, I wasn’t, it wasn’t my boss, I was talking to a co-worker.
Q: Okay.
A: But it was just like that, I didn’t know what was going on and I told her some stuff then it was just confusing and then I told her what was . going—like what happened, stuff that was going on.
Q: Okay. Do you remember what it was you told your boss or what it was you told this co-worker that the boss overheard, what were the words you used?
A: .Um,, I’m not for sure. I remember telling her I was scared.
Q: Okay. Do you remember telling your boss that you thought your boyfriend killed somebody?
The defense objection to the last question was immediately sustained and no answer was given. At the conclusion of the direct examination, the defense moved for a mistrial. The district court denied the motion, but granted the alternative request for a curative instruction and instructed the jury that “[i]t was an improper question ... so you are to totally disregard that question, and there was no answer.” The. district court determined that declaring a mistrial was unnecessary in light of the prompt, sustained objection, its strongly worded curative instruction specifically identifying the prosecutor’s question as improper, and the fact that no answer had come from the question. The district court also instructed the jury in opening and. closing .instructions that the questions of attorneys are not evidence, that they may consider only properly admitted evidence, that they should ignore and not speculate about unanswered questions, and that any evidence the court orders stricken must be disregarded.
In light of the strongly worded curative instruction, the presumption bhat juries follow the district court’s instructions, and the DNA evidence suggesting Griffin’s guilt, we conclude that there is no reasonable probability that the prosecutor’s question affected the outcome of the trial. The district court therefore did not commit reversible error when it denied Griffin’s motion for a mistrial.
III.
Griffin argues the State failed to present sufficient evidence to prove that he intentionally killed Benitez-Hernandez. Specifically, he contends that the circumstances proved support a reasonable inference that the firing of the gun was the “product of accidental discharge due to being grabbed and falling.”
When evaluating the sufficiency of the evidence, appellate courts “carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted.” State v. Boldman, 813 N.W.2d 102, 106 (Minn.2012). The evidence must be viewed in the light most favorable to the verdict, and it must be assumed that the fact-finder disbelieved any evidence that conflicted with the verdict. State v. Palmer, 803 N.W.2d 727, 733 (Minn.2011). The verdict will not be overturned if the fact-finder, upon application of the presumption of innocence and the State’s burden of proving an offense beyond a reasonable doubt, could reasonably have found the defendant guilty of the charged offense. Bernhardt v. State, 684 N.W.2d 465, 476-77 (Minn.2004).
Minnesota Statutes § 609.185, subd. (a)(3), requires the State to prove beyond a *264 reasonable doubt that a defendant “cause[d] the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit ... aggravated robbery....” Minn.Stat. § 609.185, subd. (a)(3). It is rare for the State to establish a defendant’s state of mind through direct evidence. State v. McAllister, 862 N.W.2d 49, 53 (Minn.2015).
When the State relies entirely on circumstantial evidence to prove the element of intent, we use a two-step test to determine whether the State presented sufficient evidence of intent. Id. at 53-54. First, we identify the circumstances proved, deferring to the jury’s acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proven by the State. State v. Matthews, 800 N.W.2d 629, 635 (Minn.2011) (citing State v. Andersen, 784 N.W.2d 320, 329 (Minn.2010)). Second, we examine the reasonable inferences that might be drawn from the circumstances proved, giving no deference to the fact-finder’s choice between reasonable inferences. Id. The conviction is sustained if the reasonable inferences that can be drawn from the circumstances proved as a whole are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt. Andersen, 784 N.W.2d at 332 (citing State v. Curtis, 295 N.W.2d 253, 258 (Minn.1980)).
We begin our analysis by identifying the circumstances proved, which in this case are as follows. Griffin and Grant bought a .22 semiautomatic pistol together. A semiautomatic pistol requires a person to pull the trigger for each round fired. On July 8, 2013, Griffin and Grant took the pistol to south Minneapolis and failed in an attempt to rob a man on the street. Grant hit the man in the head with a .22 semiautomatic pistol in Griffin’s presence. A short time later, Griffin and Grant decided to rob Benitez-Hernandez, L.B-H., and P.Y-E. After Griffin and Grant entered the backyard, Griffin aimed the pistol at Benitez-Hernandez. When Griffin demanded money, Benitez-Hernandez said they had no money. Griffin then hit Beni-tez-Hernandez in the head above his eyebrow with the gun, causing Benitez-Her-nandez to bend over and hold his bleeding head. L.B-H. stood up and threw a beer bottle at Griffin in an effort to distract him. Griffin ducked out of the way, fell backward, caught himself, and then “turned around and ... fired at [L.B-H.].” The bullet struck L.B-H. just above the elbow of his left arm. As L.B-H. ran to get help, Benitez-Hernandez grabbed Griffin’s leg. Griffin redirected the pistol at Benitez-Hernandez’s chest and pulled the trigger.[4] The bullet penetrated Beni-tez-Hernandez’s chest, fatally wounding *265 him. Benitez-Hernandez’s blood was found on Griffin’s shorts and shoes but no blood was found on Grant’s clothing or shoes.
The second step is to determine whether the reasonable inferences .that can be drawn from the circumstances proved as a whole are consistent with the hypothesis that Griffin is guilty and inconsistent with any rational hypothesis except that of guilt. The circumstances proved support a reasonable inference that Griffin shot Ben-itez-Hernandez with an intent to kill him. Griffin brought a loaded gun to the robbery, fired the gun in L.B-H.’s direction (eliminating any question as to the gun’s functionality), paused to regain his balance, redirected the gun toward Benitez-Hernandez, and then pulled the trigger. Moreover, the close proximity of the gun to Benitez-Hemandez’s chest made fatal damage to a vital organ a near certainty. Thus, the circumstances proved in this case support a rational inference that Griffin shot Benitez-Hernandez with an intent to kill. See State v. Young, 710 N.W.2d 272, 278-79 (Minn.2006) (explaining that a jury may infer a person’s intent to kill from the nature of the killing).
We also conclude that the circumstances proved are inconsistent with a rational hypothesis other than guilt. Specifically, the circumstances proved do not support a rational inference that the firing of the gun was the product of accidental discharge due to being grabbed and falling. Although Griffin and Grant used the handgun to beat Benitez-Hernandez and another man earlier that evening, there is no evidence that the gun accidentally discharged during either of those beatings. Instead, the circumstances proved establish that the handgun was fully functional; Griffin had to pull the trigger to fire each round; and Griffin regained his balance before redirecting the gun toward Beni-tez-Hernandez’s chest and pulling the trigger. Thus, the circumstances proved do not support a rational inference that the firing of the gun was the product of an accidental discharge.
In sum, the circumstances proved in this case are consistent with a reasonable inference that Griffin shot Benitez-Hernandez with an intent to kill and inconsistent with a reasonable inference that the firing of the gun was the product of accidental discharge due to being grabbed and falling. Accordingly, we conclude that the State presented sufficient evidence to support Griffin’s conviction.
IV.
In his pro se brief Griffin presented six additional issues to the court, specifically, whether: (1) the evidence was sufficient to prosecute Griffin for aiding and abetting Grant in the commission of the offense; (2) the district court erred by not, sua sponte, excluding Griffin’s testimony about the earlier attempted robbery; (3) the State failed to corroborate Grant’s accomplice testimony; (4) Grant’s testimony violated the Confrontation Clause of the Sixth Amendment to the United States Constitution; (5) Griffin’s counsel was ineffective for not requesting that a witness’s . cell phone be tested for fingerprints; and (6) the cumulative trial errors deprived Griffin of a fair trial. After thoroughly reviewing each issue, we conclude that none have merit.
Affirmed.
CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.
McKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

. Griffin was also convicted of an attempt offense, Minn.Stat, § 609.17 (2014), in which the uncompleted offense was first-degree intentional murder, Minn.Stat. § 609.185(a)(3), in connection with gunfire directed at L.B-H., and second-degree ássault, Minn.Stat. § 609.222 (2014), arising out of conduct involving P.Y-E,

. Spreigl evidence, or evidence of another crime, wrong, or act, Minn. R. Evid. 404(b), is addressed in State v. Spreigl, 272 Minn. 488, 139 N.W.2d 167 (1965).

. In State v. Huber, 877 N.W.2d 519, 527 (Minn.2016), we observed that the words “considerable,” "ample,” and "overwhelming” describe a large quantum of evidence presented by the State on the contested element.

. Griffin claims he was falling when the gun fired the bullet that struck Benitez-Heman-dez in the chest. However, Grant testified that Griffin regained his balance before shooting Benitez-Hernandez. More specifically, the prosecutor and Grant engaged in the following colloquy:
Q: When you said grabbed his leg, do you mean he actually made physical contact with him?
A: I believe so, yes.
Q: Did Diamond Griffin regain his composure or did he stand back up?
A: Yes, he did.
Q: What happened then?
A: The gun went off.
Consequently, Griffin’s contention that he was falling is not one of the circumstances proved in this case. State v. Fairbanks, 842 N.W.2d 297, 307 (Minn.2014) (explaining that in identifying the circumstances proved, we assume the jury accepted the State’s proof of the given circumstances and rejected any evidence in the record to the contrary).