STATE OF MINNESOTA

IN SUPREME COURT

A24-0859

Hennepin County                                                    Moore, III, J.

State of Minnesota,

          Respondent,

vs.                                                                            Filed: July 30, 2025
                                                                    Office of Appellate Courts
Diamond Lee Jamal Griffin,

          Appellant.

_____

Keith M. Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Robert I. Yount, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Diamond Lee Jamal Griffin, Rush City, Minnesota, pro se.

_____

S Y L L A B U S

1.     We review an appeal from a district court's denial of a preliminary application for relief under the Act of May 19, 2023, ch. 52, art. 4, § 24, 2023 Minn. Laws 810, 864–68, under an abuse of discretion standard.

2.     The district court did not abuse its discretion in denying Griffin's preliminary application because the application, materials submitted with the application, and relevant

records in the possession of the judicial branch failed to establish a reasonable probability that Griffin did not cause the death of a human being.

Affirmed.

O P I N I O N

MOORE, III, Justice.

The issue in this appeal is whether the district court committed reversible error in denying appellant Diamond Lee Jamal Griffin's preliminary application for relief under a 2023 session law that established a pathway to challenge certain felony murder convictions based on an aiding-and-abetting theory of criminal liability. *See* Act of May 19, 2023, ch. 52, art. 4, § 24, 2023 Minn. Laws 810, 864–68 (the Act). In 2014, Griffin was convicted in Hennepin County District Court of first-degree intentional felony murder while committing or attempting to commit aggravated robbery, Minn. Stat. § 609.185(a)(3) (2012), stemming from the July 2013 fatal shooting of Francisco Benitez-Hernandez in Minneapolis. Griffin appealed, and we affirmed Griffin's conviction, concluding that "the circumstances proved in this case are consistent with a reasonable inference that Griffin shot Benitez-Hernandez with an intent to kill and inconsistent with a reasonable inference that the firing of the gun was the product of accidental discharge due to being grabbed and falling." *State v. Griffin* (*Griffin I*), 887 N.W.2d 257, 265 (Minn. 2016). Since then, we have twice affirmed the denial of Griffin's petitions for postconviction relief. *Griffin v. State* (*Griffin II*), 941 N.W.2d 404 (Minn. 2020); *Griffin v. State* (*Griffin III*), 961 N.W.2d 773 (Minn. 2021).

2

In September 2023, Griffin filed a preliminary application for relief under the Act. As relevant here, the Act creates a pathway for individuals convicted of first-degree felony murder under an aiding-and-abetting theory of criminal liability to have their sentence vacated if they can show that they neither caused the death of a human being nor intentionally aided, advised, hired, counseled, conspired with, or otherwise procured another with the intent to cause such a death. *See* the Act, subd. 3(a)(1). The district court denied Griffin's preliminary application, concluding that after reviewing the application, attached materials, and previous decisions of our court in Griffin's case, there is "no reasonable probability that [Griffin's] application is entitled to relief under this section." Despite the Act not setting forth any appellate procedure, Griffin filed an appeal. After hearing oral argument on the issue of our jurisdiction, we allowed Griffin's appeal to proceed. *State v. Griffin* (*Griffin IV*), 20 N.W.3d 57, 58, 61–62 (Minn. 2025) (order).

The merits of Griffin's appeal are now before us. We begin by addressing the threshold question of whether Griffin was eligible to seek relief under the Act, considering judicial records regarding his case. Although there are some questions about Griffin's eligibility, we assume without deciding that Griffin was eligible to apply for relief under the Act because the State presented no argument on this question, and we do not need to decide the issue to reach our decision here. We then turn to the two issues on appeal. First, because this is the first appeal we have heard under the Act, we consider which standard of review should govern such appeals. We conclude that the standard of review for such appeals is abuse of discretion. Second, we consider whether the district court abused its

discretion in denying Griffin's application. We conclude that it did not. We therefore affirm the decision of the district court.

## FACTS

In August 2013, a Hennepin County grand jury indicted Griffin for first-degree intentional felony murder while committing or attempting to commit aggravated robbery for the shooting death of Francisco Benitez-Hernandez, as well as five other offenses. The indictment alleged both principal and aiding-and-abetting theories of criminal liability regarding count one, first-degree felony murder of Benitez-Hernandez. *See* Minn. Stat. § 609.185(a)(3); Minn. Stat. § 609.05, subd. 1 (2022) ("A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."). The State's pre-indictment criminal complaint alleged that on July 8, 2013, Griffin and his friend Ryan Grant, while armed, attempted to rob Benitez-Hernandez, L.B-H., and P.Y-E. in the backyard of Benitez-Hernandez's Minneapolis home. The complaint alleged that, when the victims told Griffin and Grant that they had no money, one of the men "started shooting," injuring L.B-H. and fatally wounding Benitez-Hernandez. In a later police interview, Grant identified Griffin as the shooter.

Griffin pleaded not guilty and demanded a jury trial. The State's theory at trial centered on demonstrating that Griffin shot Benitez-Hernandez. But the State also argued that the jury could find Griffin guilty under an aiding-and-abetting theory of liability if it believed Grant, not Griffin, shot Benitez-Hernandez. The district court provided hybrid jury instructions which permitted the jury to find Griffin guilty of first-degree felony

murder as either the principal or as an accomplice to Grant. Ultimately, the jury found Griffin guilty of: (1) Count 1, first-degree murder of Benitez-Hernandez while committing or attempting to commit aggravated robbery, Minn. Stat. § 609.185(a)(3); (2) Count 3, the offense of attempt, for which the uncompleted offense was first-degree felony murder of L.B-H, *id.*; and (3) Count 5, second-degree assault of P.Y-E, Minn. Stat. § 609.222, subd. 1 (2024). The district court convicted Griffin of those three offenses and sentenced him to life in prison with the possibility of release after 30 years for Count 1; 153 months in prison for Count 3, to be served consecutively to Count 1; and 36 months in prison on Count 5, to be served consecutively to Counts 1 and 3.

Griffin appealed to this court, and we affirmed his conviction of first-degree felony murder. *Griffin I*, 887 N.W.2d at 257. In relevant part, Griffin argued on appeal that "the State failed to present sufficient evidence to prove that he intentionally killed Benitez-Hernandez," asserting that "the circumstances proved support a reasonable inference that the firing of the gun was the 'product of accidental discharge due to being grabbed and falling.' "[1] *Id.* at 263. Notably, Griffin's counsel conceded in briefing to us that Griffin

---

[1] Griffin also argued that the district court erroneously admitted *Spreigl* evidence and denied his motion for a mistrial. *Griffin I*, 887 N.W.2d at 261–62. We concluded that any error in admitting *Spreigl* evidence was harmless and that the district court did not commit reversible error in denying Griffin's motion for a mistrial. *Id.* at 262–63; *see State v. Spreigl*, 139 N.W.2d 167, 169 (Minn. 1965) (stating that evidence of other crimes is inadmissible except to establish motive, intent, absence of mistake, identity, or a common scheme or plan).

fired the shot that killed Benitez-Hernandez, but counsel argued that the shot was accidental.[2] We described the circumstances proved in *Griffin I* as follows:

> Griffin and Grant bought a .22 semiautomatic pistol together. A semiautomatic pistol requires a person to pull the trigger for each round fired. On July 8, 2013, Griffin and Grant took the pistol to south Minneapolis and failed in an attempt to rob a man on the street. Grant hit the man in the head with a .22 semiautomatic pistol in Griffin's presence. A short time later, Griffin and Grant decided to rob Benitez–Hernandez, L.B-H., and P.Y-E. After Griffin and Grant entered the backyard, Griffin aimed the pistol at Benitez-Hernandez. When Griffin demanded money, Benitez-Hernandez said they had no money. Griffin then hit Benitez-Hernandez in the head above his eyebrow with the gun, causing Benitez-Hernandez to bend over and hold his bleeding head. L.B-H. stood up and threw a beer bottle at Griffin in an effort to distract him. Griffin ducked out of the way, fell backward, caught himself, and then "turned around and . . . fired at [L.B-H.]." The bullet struck L.B-H. just above the elbow of his left arm. As L.B-H. ran to get help, Benitez-Hernandez grabbed Griffin's leg. Griffin redirected the pistol at Benitez-Hernandez's chest and pulled the trigger. The bullet penetrated Benitez-Hernandez's chest, fatally wounding him. Benitez-Hernandez's blood was found on Griffin's shorts and shoes but no blood was found on Grant's clothing or shoes.

*Id.* at 264–65.

We concluded that these "circumstances proved support a reasonable inference that Griffin shot Benitez-Hernandez with an intent to kill him" and were "inconsistent with a rational hypothesis other than guilt." *Id.* at 265. We therefore held that "the State presented sufficient evidence to support Griffin's conviction." *Id.* Griffin raised six additional issues on appeal, including whether the evidence at trial was sufficient to prove that Griffin aided

---

[2]     Griffin's briefing to us in *Griffin I* stated that "[t]he circumstances proved showed that [Griffin] possessed a loaded firearm during the robbery," but that "[t]he way [Griffin] shot Benitez-Hernandez does not demonstrate an intent to kill."

6

and abetted Grant in the commission of the offense. *Id.* "After thoroughly reviewing each issue," we concluded that none of the six additional claims had merit. *Id.*[3]

In 2023, the Minnesota Legislature enacted several changes to Minnesota law governing the offense of felony murder, including the Act. The Act established a process for those previously convicted of certain felony murder offenses under an aiding-and-abetting theory of liability "to petition to have the person's conviction vacated." The Act, subd. 1. Relevant here, to obtain relief, an individual convicted of first-degree intentional felony murder under Minn. Stat. § 609.185(a)(3) must demonstrate that they (1) "did not cause the death of a human being" and (2) "did not intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being." The Act, subd. 3(a)(1).

An individual seeking relief under the Act must begin by filing "a preliminary application" in district court. *See id.*, subd. 4. Within 90 days of receiving the application,

---

[3]     Griffin also filed several petitions for postconviction relief following his direct appeal. Two of these petitions were consolidated in *Griffin II*, in which we affirmed the district court's dismissal of Griffin's petitions for relief (including claims of ineffective assistance of trial and appellate counsel, *Brady* violations, and denial of due process) as time-barred under Minn. Stat. § 590.01, subd. 4(a) (2022). 941 N.W.2d at 407–10; *see Brady v Maryland*, 373 U.S. 83, 87 (1963) (the suppression by the State of material evidence favorable to the defendant violates the defendant's right to due process). The next year, in 2021, we affirmed the district court's denial of Griffin's subsequent claims of due process violations, again concluding that the claims were time-barred under Minn. Stat. § 590.01, subd. 4(a). *Griffin III*, 961 N.W.2d at 777. Griffin filed another postconviction petition in 2023, which the district court rejected as time-barred under Minn. Stat. § 590.01, subd. 4(a), and procedurally barred under *Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) (stating that all claims that were or could have been raided on direct appeal will not be considered in a subsequent petition for postconviction relief). Griffin did not appeal that decision.

the district court must "determine whether, in the discretion of that judge, there is a reasonable probability that the application is entitled to relief under [the] section." *Id.*, subd. 5(c). "If the reviewing judge determines that there is a reasonable probability that the applicant is entitled to relief, the judge shall send notice to the applicant and the applicant's attorney, if any, and the prosecutorial office responsible for prosecuting the applicant." *Id.*, subd. 5(g). But if the judge "determines that there is not a reasonable probability that the applicant is entitled to relief, the judge shall send notice to the applicant," including "a brief statement explaining the reasons the reviewing judge concluded that there is not a reasonable probability that the applicant is entitled to relief."[4] *Id.*, subd. 5(h).

Griffin filed a preliminary application for relief under the Act on September 25, 2023. Griffin stated, "I have maintained my standing in this case-in-chief that I have not [k]illed anyone, [n]or willingly participated causing the death of a human being[.]" He argued that the State's "evidence was unclear as to who was the actual shooter and who played what role in assisting the death." He also cited to the testimony of multiple

---

[4] The Act also permits the reviewing judge to "summarily deny an application" in some cases, including if the application does not contain the required information under the Act, the applicant was not convicted of one of the crimes enumerated by the Act, or "the issues raised in the application are not relevant to the relief available under [the Act] or have previously been decided by the court of appeals or the supreme court in the same case." The Act, subd. 5(e). Because the district court did not summarily deny the application in this case, we express no opinion on the applicability of subd. 5(e) of the Act to Griffin's application.

witnesses, including one who testified that "the taller person," Grant, "had the gun," and one who testified that they heard Grant confess to the killing.

Griffin's application was referred to Hennepin County District Court.[5] On November 27, 2023, the district court issued an order denying Griffin's preliminary application. The district court recounted the procedural history and factual background of Griffin's case and concluded:

> Mr. Griffin has not met either [criterion] required to seek relief through a preliminary application. The jury determined Mr. Griffin was the actual cause of Mr. Benitez-Hernandez's death when he shot him in the chest. Additionally, Mr. Griffin entered the victim's backyard with a loaded firearm with the intent to commit a robbery that resulted in death . . . . Based on Mr. Griffin's action causing the death of Mr. Benitez-Hernandez, there is no reasonable probability that this application is entitled to relief under this section. The Court has considered the preliminary application and materials . . . and determines Mr. Griffin has not met the criteria to grant a preliminary application; therefore, [he] is not entitled to relief.

On December 11, 2023, Griffin filed a pro se "Notice of Appeal" with the Clerk of Appellate Courts. The clerk's office filed Griffin's appeal in the court of appeals under case number A23-1910, and the court of appeals then requested supplemental briefing on its jurisdiction to hear Griffin's appeal.

The court of appeals dismissed Griffin's appeal on March 19, 2024. *State v. Griffin*, No. A23-1910, 2024 WL 1231214, at *1 (Minn. App. Mar. 19, 2024). The court of appeals

---

[5] The Act, when passed, required that all such applications be submitted to Ramsey County District Court. *See* the Act, subd. 4(a). We then issued an order appointing the "judges in the district court of the judicial district in the county where the conviction was entered . . . [to] discharge the duties of a reviewing judge under the Act . . . ." Order Regarding the Filing of Requests for Relief in Aid and Abet Felony Murder Cases, No. ADM09-8010, Order at 2 (Minn. filed Aug. 18, 2023).

determined that the denial of Griffin's preliminary application under the Act was an appealable order but that only the supreme court, not the court of appeals, had jurisdiction to hear such an appeal. *Id*. (citing Minn. R. Crim. P. 29 cmt. ("After a first-degree murder conviction, only the Supreme Court has appellate jurisdiction") and Minn. Stat. § 480A.06, subd. 1 (2024) (the court of appeals lacks jurisdiction over "criminal appeals in cases in which the defendant has been convicted of murder in the first degree.")). Therefore, the court of appeals dismissed Griffin's appeal for lack of subject matter jurisdiction. *Griffin*, 2024 WL 1231214, at *1. On May 23, 2024, Griffin again filed an appeal, this time specifically seeking review from this court.

Although the deadline to file an appeal had passed, we accepted Griffin's untimely appeal in the interests of justice. We then requested supplemental briefing on two questions related to our own jurisdiction: (1) whether the denial of a preliminary application is an appealable order; and (2) if so, which rules and statutes govern those appeals. After hearing oral argument on these questions, we held that an order denying a preliminary application under the Act is within our appellate jurisdiction, and we directed Griffin's appeal to proceed. *Griffin IV*, 20 N.W.3d at 58, 61–62. We reasoned that Minnesota Rule of Criminal Procedure 29.02, subdivision 1(b)—which provides that a defendant may appeal directly to our court "from an adverse final order deciding a petition for postconviction relief under [Minnesota Statutes chapter 590 (2022)]"—expressly granted us jurisdiction. We held as such because the order denying Griffin's application was a "final order" under our precedent, and because the remedy under chapter 590 "is broad enough to encompass" an application for relief under the Act. *Griffin IV*, 20 N.W.3d at 59–61.

10

We now take up the merits of Griffin's appeal and analyze whether the district court erred when it denied Griffin's preliminary application.

## ANALYSIS

There are two primary issues before the court: (1) which standard of review should govern an appeal from the denial of a preliminary application under the Act, and (2) whether the district court erred in denying Griffin's application.

Before addressing these issues, we consider a threshold question that the parties did not squarely address before us: Was Griffin *eligible* to file a preliminary application under the Act? We raise this issue because subdivision 1 of the Act establishes specific eligibility requirements for a person to be "entitled to petition to have the person's conviction vacated pursuant to [the Act]."[6] As relevant here, the Act grants the right to petition for relief to only those who were "convicted [of] a violation of Minnesota Statutes, section 609.185, paragraph (a), clause (3)" under an aiding-and-abetting theory of liability *See* the Act, subds. 1, 3(a)(1).

It is undisputed that Griffin was convicted of first-degree felony murder while committing or attempting to commit aggravated robbery, Minn. Stat. § 609.185(a)(3), in connection with the shooting death of Benitez-Hernandez. But it is less clear based on the record before us that Griffin was convicted of that crime "under the theory of liability for

---

[6] We consider the eligibility question despite the parties' failure to raise or discuss this issue because "it is the responsibility of appellate courts to decide cases in accordance with law," even when the parties agree on an issue. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990).

crimes of another," as required for eligibility under the Act. *See* the Act, subd. 1. A grand jury indicted Griffin for violating Minn. Stat. § 609.185(a)(3) under both principal and aiding-and-abetting theories of liability. And after trial, the district court provided hybrid jury instructions which permitted the jury to find Griffin guilty of first-degree felony murder as either the principal or as an accomplice to Grant. Accordingly, the jury verdict did not specify the theory under which Griffin was found guilty of first-degree felony murder.[7]

On direct appeal, we affirmed Griffin's first-degree felony murder conviction under Minn. Stat. § 609.185(a)(3). *Griffin I*, 887 N.W.2d at 265. Although Griffin acknowledged that the State had presented direct evidence at trial to show that Griffin was the shooter, on appeal Griffin argued that the circumstantial evidence presented at trial was insufficient to prove that Griffin shot Benitez-Hernandez with an *intent* to kill. *See id.* at 263. We affirmed Griffin's conviction, concluding that the State had presented sufficient evidence to support a rational inference that Griffin shot Benitez-Hernandez with an intent to kill. *Id.* at 265. We also summarily rejected Griffin's pro se claim that there was insufficient evidence to support his conviction on a theory that he aided and abetted Grant in the commission of the murder. *Id.* Given this history of the case, there is a question of whether Griffin meets the threshold qualification of being "convicted . . . under the theory

---

[7]    This lack of clarity is among the reasons that, in the years since Griffin's trial, we have declared that "[t]he era of hybrid instructions has ended." *State v. Ezeka*, 946 N.W.2d 393, 408 (Minn. 2020).

12

of liability for crimes of another" and therefore is eligible to file a preliminary application under the Act. *See* the Act, subd. 1.

All the same, the State does not argue this issue and appears to concede Griffin's eligibility to petition for relief. Because we do not need to decide this issue to resolve this appeal, we assume without deciding on these facts that Griffin was eligible to file a preliminary application for relief and that this appeal is properly before us.

I.

We first must decide the standard of review that should govern an appeal from the denial of a preliminary application under the Act. This is a legal question of first impression for this court, which we consider de novo. *See State v. Martens*, 18 N.W.3d 752, 756 (Minn. 2025) (stating that we review questions of law de novo).

Both parties state that abuse of discretion is the appropriate standard of review here, and we agree. First, we note that the text of the Act requires a judge reviewing a preliminary application to "determine whether, in the *discretion* of that judge, there is a reasonable probability that the application is entitled to relief under [the Act]." The Act, subd. 5(c) (emphasis added). The text of the Act therefore indicates that we should review the denial of a preliminary application for an abuse of discretion. Furthermore, when we determined in *Griffin IV* that this appeal could proceed under Minn. R. Crim. P. 29, we reasoned that appeals like Griffin's, despite not being filed under chapter 590, could be *treated* as postconviction proceedings. *Griffin IV*, 20 N.W.3d at 61 ("[W]e conclude that . . . [Minnesota Statutes] section 590.01 . . . is broad enough to encompass an appeal from the denial of a preliminary application under the Act."). We review the denial of a

defendant's petition for postconviction relief for an abuse of discretion. *Griffin III*, 961 N.W.2d at 776. Because we have treated the denial of Griffin's preliminary application as a denial of a petition for postconviction relief for purposes of our jurisdiction, we conclude that the same standard of review—abuse of discretion—should govern here.[8]

II.

Finally, we take up whether the district court abused its discretion in denying Griffin's preliminary application. "A [district] court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). We review a district court's factual findings for clear error and its legal conclusions de novo. *Id.*

The Act empowers a district court judge to review "the preliminary application and any materials submitted" along with it, as well as any "relevant records in the possession of the judicial branch" to determine if "there is a reasonable probability that the application is entitled to relief under [the Act]." The Act, subd. 5(c)–(d). Because Griffin was convicted of a violation of Minn. Stat. § 609.185(a)(3), Griffin's application must show a reasonable probability that he (1) "did not cause the death of a human being" and (2) "did

---

[8]    The court of appeals has similarly applied an abuse of discretion standard to appeals under the Act. *See Raisch v. State,* No. A24-0267, 2024 WL 3564548, at *2 (Minn. App. Jul. 29, 2024) ("We review the denial of a petition for postconviction relief without an evidentiary hearing for an abuse of discretion"); *see also Dirk v. State*, No. A24-0408, 2024 WL 5036718, at *3 (Minn. App. Feb. 26, 2025) ("Denial of a preliminary application under the act is appealable as from a denial of postconviction relief. Accordingly, we review the district court's denial of a preliminary application for an abuse of discretion . . . ." (citation omitted)).

14

not intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being." *See* the Act, subd. 3(a)(1).

Griffin points out that he was indicted under both principal and aiding-and-abetting theories of liability and that the jury could have found Griffin guilty under either theory. Griffin appears to argue that, because the jury verdict did not specify the theory of liability under which Griffin was found guilty, the State never successfully established that he was the shooter, and Griffin can therefore prove that he did not cause the death of a human being.[9] The State responds that the conclusions we made in Griffin's previous appeals about the facts established at trial—that Griffin and Grant bought a pistol together; Griffin carried a pistol into Benitez-Hernandez's and L.B-H.'s backyard; Griffin intended to rob the men; and Griffin shot two people, including killing Benitez-Hernandez—preclude him from prevailing under the Act.

The district court reviewed Griffin's application, supporting materials, and our decisions in Griffin's prior appeals, and it denied the application. The district court stated that "[t]he facts of this case are well-established": "Griffin entered the victim's backyard

---

[9] Griffin's arguments under the Act are not apparent from his briefing to this court. But we liberally construe petitions for postconviction relief. *Fox v. State*, 913 N.W.2d 429, 433 (Minn. 2018). We likewise review pro se arguments "with an understanding eye." *See Jackson v. State*, 919 N.W.2d 470, 472–73 (Minn. 2018) (citation omitted) (internal quotation marks omitted). Accordingly, we construe Griffin's claim for relief as a claim that he did not cause the death of another, as is required for him to obtain relief. *See* the Act, subd. 3(a)(1). Even with our liberal construction of Griffin's petition, several of the points raised in his brief, including the use of hybrid jury instructions at his trial, do not constitute grounds for reversing the district court's denial of his preliminary application under the Act, and moreover, would now be time-barred. *See* Minn. Stat. § 590.01, subd. 4(a).

with a loaded firearm with the intent to commit a robbery" and "used a deadly weapon that was the direct cause of Mr. Benitez-Hernandez's murder." "Based on Mr. Griffin's action causing the death of Mr. Benitez-Hernandez," the district court determined that "there is no reasonable probability that this application is entitled to relief under this section."

We conclude that the district court did not abuse its discretion when it denied Griffin's preliminary application.[10] The facts established at trial and described in Griffin's prior appeals, as well as our prior holding that the trial evidence "support[ed] a reasonable inference that Griffin shot Benitez-Hernandez with an intent to kill him," *Griffin I*, 887 N.W.2d at 265, support the district court's rejection of Griffin's apparent claim that he did not cause the death of a human being. Griffin presents no new arguments or evidence in his application to support his claim, and we thus conclude that the district court acted within its discretion in determining that Griffin's application did not demonstrate a reasonable probability that he is entitled to relief under the Act.[11]

---

[10] We emphasize that we have not yet had occasion to interpret the meaning of the standard set forth within the Act—"reasonable probability that the applicant is entitled to relief"—and that we adopt no interpretation of that standard here. We conclude, on these facts, that Griffin's application would not prevail under any plausible construction of the words "reasonable probability that the applicant is entitled to relief."

[11] The statement in the district court's order that "[t]he jury determined Mr. Griffin was the actual cause of Mr. Benitez-Hernandez's death when he shot him in the chest" was incorrect. The jury verdict did not clarify whether Griffin was found guilty under a principal or aiding-and-abetting theory of liability. The verdict itself therefore does not mean that the jury determined that Griffin fired the weapon that killed Benitez-Hernandez. But this statement alone does not render the district court's decision an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.