*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0306**

In the Matter of the Welfare of: T. C. P., Child.

**Filed November 3, 2025**
**Reversed; motion denied**
**Harris, Judge**

Becker County District Court
File No. 03-JV-24-520

Cathryn Middlebrook, Chief Appellate Public Defender, Laura G. Heinrich, Assistant Public Defender, St. Paul, Minnesota (for appellant T.C.P.)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brian W. McDonald, Becker County Attorney, Adam C. Brenna, Assistant County Attorney, Detroit Lakes, Minnesota (for respondent State of Minnesota)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

Appellant T.C.P. argues that respondent State of Minnesota presented insufficient evidence to convict him of three-degree criminal sexual conduct. We reverse.

**FACTS**

Respondent State of Minnesota filed a juvenile delinquency petition charging T.C.P. with one count of third-degree criminal sexual conduct—penetration, victim 14-15 years old, actor more than 24 months older, under Minnesota Statutes section 609.344,

subdivision 1a(b) (2022), between August 1 and October 31, 2023. During the one-day trial, the district court heard testimony from four witnesses: M.M., her mother, a law enforcement officer, and T.C.P.'s mother. The district court received the following exhibits: body-worn camera footage, a Detroit Lakes police department incident report, and five videos showing sexual activity between two individuals. Consistent with applicable law, the facts below summarize the trial evidence, presented in the light most favorable to and consistent with the verdict.

T.C.P. (born January 2006) and M.M. (born August 2008) met in July 2023 when T.C.P. was 17 years old, and M.M. was 14 years old. T.C.P. is approximately 30 months older than M.M. M.M. testified that she and T.C.P. secretly had sexual intercourse in her parent's home in Becker County while her parents were sleeping the first night they met and multiple times over the next few days. M.M. testified that she at first did not tell her parents about her relationship with T.C.P. M.M.'s mother first learned of her relationship with T.C.P. on July 20, 2023, when law enforcement came to the family home and informed M.M.'s mother that they had pulled over a vehicle in which T.C.P. and M.M. were sitting together in the back seat two days earlier.

That same month, M.M. attended volleyball camp at North Dakota State University located in Fargo, North Dakota. While at volleyball camp, M.M. snuck out in the middle of the night and went to T.C.P.'s house in Fargo. M.M. testified that she had sex with T.C.P. at his house in Fargo while visiting him. Contrary to her testimony at trial, when asked in a forensic interview on February 22, 2024, "when did you guys start becoming sexually involved?" M.M. responded, "about like end of August . . . not at that volleyball

2

camp." M.M. later testified at trial that she lied about the timing of the sexual intercourse during the forensic interview.

No testimony given at trial explicitly states that M.M. and T.C.P. had sex in Minnesota in August 2023. M.M. testified that she saw T.C.P. on her birthday in August 2023. The state presented no testimony indicating that M.M. and T.C.P. had sex on this date. M.M. only testified that she and T.C.P. "got caught hanging out[.]" The day after M.M.'s birthday, her mother found a message on her phone from T.C.P. asking M.M. if "she was ready for a baby." M.M.'s mother testified that, after discovering the messages from T.C.P., she purchased an emergency contraceptive pill. M.M.'s mother then made M.M. take the emergency contraceptive pill and made her call T.C.P. on speakerphone so she could hear their conversation. On the phone, M.M. told T.C.P., "[m]y mom knows everything, and she made me take a Plan B[.]" T.C.P. responded, "[y]ou fake swallowed it, right?"

M.M. and her mother both testified that "when school started" T.C.P. would sometimes pick M.M. up from school during open periods or before volleyball practice. M.M. testified that "she frequently had sex with [T.C.P.] in his car" but did not provide dates or locations for these encounters.

M.M. and her mother both testified that, sometime in October 2023, M.M. ran away from home and went to T.C.P.'s house in Fargo. M.M. testified that she and T.C.P. slept in the same bed while she was there. T.C.P.'s mother testified that M.M. slept in T.C.P.'s mother's bed, not in T.C.P.'s bed. There was no testimony provided that M.M. and T.C.P. had sex in Minnesota in October 2023.

M.M.'s mother testified that, in January 2024, after staying at a friend's house for the night, she came home "with her friend's phone." M.M.'s mother testified that she "found nude images on the phone" and "a video of [M.M. and T.C.P.] having sex." M.M.'s mother clarified that, in the video, "you couldn't see their faces, but it was on [M.M.'s] phone along with all the other images[.]" None of the photographs mentioned in M.M.'s mother's testimony are included in the record.

In February 2024, a law-enforcement officer was dispatched to Lakes Crisis Center in Detroit Lakes to meet with M.M.'s mother and an advocate. During the meeting, M.M.'s mother produced a cellphone on which she told the officer she had seen pictures and videos of M.M. and T.C.P. involved in sexual activity but there were no dates indicating when the sexual activity occurred. The officer took the phone back to the police station.

The officer testified that he isolated five videos in which he saw footage of "[a] young man and a young woman involved in sexual activity to include oral sex and sexual intercourse." M.M.'s face is visible in one of the five videos, and T.C.P.'s face is not visible in any of the videos. The sexual acts in three videos take place in a car during the daylight hours, but no testimony given at trial establishes the location of the car when the videos were filmed. The police report states that "the sex videos were taken in the car while in Detroit Lakes" but does not state when the videos were filmed. The other two videos take place in an unidentified room, the location of which is unknown. At trial the district court received the five videos into evidence.

In a forensic interview played for the jury, M.M. states that she filmed all five videos herself. M.M. later testified at trial that she lied to the school resource officer and that she

4

and T.C.P. "both recorded their sexual activity."  In her forensic interview, M.M. stated that the date of the video files in her phone was not accurate because she filmed the videos on Snapchat months before downloading them and saving them to her phone, and the date shown on the files was the download date.  M.M. testified at trial that "some" of the videos were filmed "during summer, a couple in September and then there was some when he was allowed to come over.  There is some in like December, late November."

M.M.'s credibility was a contested issue at trial.  M.M.'s mother testified that "[M.M.] told a lot of lies to [T.C.P.] during their relationship."  M.M. herself testified that she lied about many things in interviews and conversations before the trial, including when she and T.C.P. first had sex, her age, that only she filmed the videos of them having sex, and that her parents were physically abusing her.  Whether the sexual acts which occurred within the charged timeframe took place in Minnesota was another contested issue at trial.

The district court found T.C.P. guilty of third-degree criminal sexual conduct.  The parties appeared on January 23, 2025, for a disposition hearing.[1]  The district court adjudicated T.C.P. delinquent and required he register as a predatory offender for a period of ten years.  T.C.P. appeals.

## DECISION

T.C.P. raises two issues.  First, T.C.P. challenges the district court's order finding him guilty of the charged offense, arguing that "the state's evidence was insufficient to establish beyond a reasonable doubt that the sexual conduct occurred" in Minnesota

---

[1] The disposition hearing was the day before T.C.P.'s 19th birthday.

5

"during the charged timeframe."[2]  Second, T.C.P. argues that his "adjudication must be vacated and remanded for a new dispositional hearing because his lawyer provided ineffective assistance of counsel."  Our decision on the first issue is dispositive so we need not address the second issue. [3]

**The state did not present sufficient evidence to prove beyond a reasonable doubt that T.C.P. had sexual contact with M.M. in Minnesota sometime between August 1, 2023, and October 31, 2023.**

The district court found T.C.P guilty of third-degree criminal sexual conduct—penetration—victim 14-15 years old, actor 24 months older, under section 609.344, subdivision 1a(b), which requires the state to prove beyond a reasonable doubt that: (1) [T.C.P.] engaged in sexual penetration with the complainant; (2) the complainant was at least 14 but less than 16 years old; (3) [T.C.P.] was more than 24 months older than the complainant; (4) the sexual penetration took place in Minnesota; and (5) the sexual penetration took place between August 1 and October 31, 2023.  Minn. Stat. § 609.344, subd. 1a(b).

---

[2] T.C.P. argues that the state's evidence was insufficient to establish beyond a reasonable doubt that the sexual conduct occurred in Becker County, Minnesota, the location of the charged offense.  But, under *State v. Paulson*, 22 N.W.3d 144 (Minn. 2025) (holding that venue is not an element of a criminal offense), whether the alleged offense took place in Becker County is irrelevant.  Instead, we consider whether the state's evidence was insufficient to establish beyond a reasonable doubt that the sexual conduct occurred within Minnesota state lines because this is jurisdictional.  Minnesota does not have jurisdiction to punish a crime that is not committed within the territorial jurisdiction of the state.  *See State v. Smith*, 421 N.W.2d 315, 318 (Minn. 1988); *see also* Minn. Stat. § 609.025 (2024).

[3] T.C.P. also moves to strike portions of the state's brief and addendum.  Because we reverse T.C.P.'s conviction, we deny T.C.P.'s motion to strike as moot.

It is uncontested that M.M. was at least 14 but less than 16 years old and T.C.P. was more than 24 months older than M.M. The question is whether the state proved beyond a reasonable doubt that T.C.P. had sexual intercourse with M.M. in Minnesota sometime between August 1, 2023, and October 31, 2023. Because the state did not provide any testimony about specific dates as to when the sexual activity occurred, all evidence of sexual activity between T.C.P. and M.M. in Minnesota within the charged timeframe is circumstantial. Our task is to determine whether the circumstantial evidence in the record sufficiently proves that T.C.P. had penetrative sex with M.M. in Minnesota between August 1 and October 31, 2023.

### A.    Legal Standard

T.C.P. challenges the sufficiency of the evidence to establish that the criminal acts occurred within Minnesota during the time period charged in the complaint to support the finding of guilt of third-degree criminal sexual conduct. "When evaluating the sufficiency of the evidence, appellate courts carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation and citations omitted). "The evidence must be viewed in the light most favorable to the verdict, and it must be assumed that the fact-finder disbelieved any evidence that conflicted with the verdict." *Id.* "The verdict will not be overturned if the fact-finder, upon application of the presumption of innocence and the State's burden of proving an offense beyond a

reasonable doubt, could reasonably have found the defendant guilty of the charged offense." *Id.*

"[D]irect evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation and alteration omitted). Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* "[C]ircumstantial evidence always requires an inferential step to prove a fact that is not required with direct evidence." *Id.* "When the direct evidence of guilt on a particular element is not alone sufficient to sustain the verdict," appellate courts apply a two-step circumstantial-evidence standard of review. *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017).

In reviewing the sufficiency of circumstantial evidence, an appellate court uses a two-step analysis:

> The first step is to identify the circumstances proved . . . [I]n determining the circumstances proved, we consider only those circumstances that are consistent with the verdict. This is because the [fact-finder] is in the best position to evaluate the credibility of the evidence even in cases based on circumstantial evidence.
>
> The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt. We review the circumstantial evidence not as isolated facts, but as a whole. We examine independently the reasonableness of all inferences that might be drawn from the circumstances proved; including the inferences consistent with a hypothesis other than guilt. Under this second step, we must determine whether the circumstances proved are consistent with guilt and inconsistent

8

with any rational hypothesis except that of guilt, not simply whether the inferences that point to guilt are reasonable. We give no deference to the fact finder's choice between reasonable inferences.

*State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013) (quotations and citations omitted).

**B.     Circumstances Proved**

We begin by identifying the circumstances proved. Viewing the state's evidence in the light most favorable to the verdict, the following circumstances are established. M.M. was 15 years old when she and T.C.P. engaged in sexual intercourse. T.C.P. was approximately 30 months older than M.M. There was direct evidence that T.C.P. and M.M. engaged in sexual intercourse based on M.M.'s testimony. T.C.P. and M.M. would have sex almost every time they hung out, and they hung out almost every night for a few months. T.C.P. and M.M. would have sex in her house, his house, or his mom's car. T.C.P. and M.M. hung out in Detroit Lakes or Frazee, Minnesota, or Fargo, North Dakota. The circumstances proved between August 1 and October 31, 2023, are that T.C.P. and M.M. would sometimes meet during the school day or late at night and have sex in T.C.P.'s car. The circumstances proved do not include the location of T.C.P.'s car when he and M.M. would have sex in it.

**C.     Reasonable Inferences Other Than Guilt**

Turning to the next step, we evaluate "independently the reasonableness of all inferences that might be drawn from the circumstances proved," including inferences consistent with a hypothesis other than guilt. *State v. Andersen*, 784 N.W.2d 320, 329

9

(Minn. 2010) (quotation omitted). In doing so, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply whether the inferences that point to guilt are reasonable." *Silvernail*, 831 N.W.2d at 598-99 (quotation omitted). At this stage, we "give no deference to the fact finder's choice between reasonable inferences." *Andersen*, 784 N.W.2d at 329-30 (quotation omitted).

T.C.P. acknowledges that the circumstances proved support a reasonable hypothesis that he and M.M. had sexual intercourse. But the question remains whether the state presented insufficient evidence to prove beyond a reasonable doubt that T.C.P. had penetrative sex with M.M. in Minnesota within the charged timeframe. T.C.P. asserts that "the only specific times and locations that [M.M.] testified to were either outside of the charged date range . . . or occurred in North Dakota[,]" and that "[t]he only specific corroboration was for acts in North Dakota or in the month of July." The state argues that there is a reasonable inference that at some point after August 1, 2023, during one of the many times T.C.P. and M.M. were having sex, one of those times would have been either in her home, or in the car while around town in Detroit Lakes or Frazee, Minnesota.

In its order finding T.C.P. guilty of the third-degree criminal sexual conduct, the district court noted that "[t]he [s]tate does not significantly address the issue of the location of the sexual encounters." As to the issue of location, the district court found:

> During the period of August 1, 2023 to October 31, 202[3], the alleged victim testified that she would sneak out of her house at night to have sex with [T.C.P.] in his car. The alleged juvenile victim also testified that . . . [T.C.P.] would pick her

10

up after school, during open periods, and before volleyball activities to have sex in his car.

. . . .

The Court finds that this credible testimony shows that when the alleged juvenile victim had a moment of free time or when she could sneak out of her house, she would contact [T.C.P.], who would come to her location where they would have sex in his vehicle. The alleged juvenile victim testified that she had sex in [T.C.P.'s] vehicle in Detroit Lakes, Frazee, and Fargo. Two of these locations are in Becker County and the state of Minnesota.

Given that the parties would have sex late at night when the alleged juvenile victim would sneak out of her house and during gaps during the school day, the Court finds that the only reasonable inference is that [T.C.P.] had engaged in sexual penetration with the alleged victim near the alleged juvenile victim's home and school. The assertion that [T.C.P.] would pick up the alleged juvenile victim late a[t] night and during the school day and then spend hours driving out of Becker County, much less out of the State of Minnesota to have sex in [T.C.P.'s] car before returning the alleged juvenile victim to home or school is simply so incredulous as to not warrant any belief. This constitutes the kind of fanciful [and] capricious doubt that is not a reasonable doubt.

The district court's order conflates M.M.'s testimony about spending time in Detroit Lakes, Frazee, and Fargo in July, and M.M.'s separate testimony about spending time with T.C.P. during the school year. M.M.'s testimony about time spent in Detroit Lakes and Frazee is bookended by two dates: July 4, 2023, the night M.M. and T.C.P. first had sex, and July 20, 2023, when law enforcement came to M.M.'s parent's house. The testimony is as follows:

Q: Okay. How often were you seeing him after the 4th of July?
A: Probably like five nights a week or more.

Q: Okay. And did he come to you every time?
A: Yes.

11

Q: Where would you two hang out when you saw each other?
A: Kind of just around the town in Detroit Lakes. Sometimes Fargo. Sometimes Frazee.

. . . .

Q: When you were having sex on these nights, where were you having sex?
A: Sometimes his house; sometimes in his mom's car.

. . . .

Q: Okay. Where was his mom's house?
A: In Fargo.

Q: Okay. Were your—did you tell your parents about him in this timeframe?
A: Not during the summer. They didn't find out about him until I—until the police came to my house [on July 20, 2023].

M.M.'s testimony about meeting "during the school" year does not include specific locations or dates:

A: He would pick me up sometimes during the school day because school had started like a couple of weeks after that, and before volleyball tournaments, on my open hours. So mostly during school because a little while after, like, all that sneaking out stuff, my parents got cameras so I wasn't doing that anymore.

Q: Okay. Would you hang out in the car or other places?
A: In the car and like—kind of like a couple of places around town but that's it.

Q: Okay. And when you were seeing him during the day like this, were you two having sex?
A: Yes.

Q: Were you having sex in the car?
A: Yeah.

12

There is direct evidence of sexual activity taking place between T.C.P. in Minnesota at M.M.'s home in July 2023.[4] But there is no direct evidence of sexual activity between T.C.P. and M.M. taking place in Minnesota between August 1 and October 31, 2023.

The district court inferred from M.M.'s testimony that the only rational conclusion is that M.M. and T.C.P. were having sex in Becker County, Minnesota within the charged time frame. The district court asserts the theory that the sexual encounters took place outside Becker County or in Fargo "is simply so incredulous as to not warrant any belief. This constitutes the kind of fanciful capricious doubt that is not a reasonable doubt." The evidence available in the record on appeal leads us to disagree.

The district court does not explain why it is irrational to infer that M.M. and T.C.P. had sex outside Minnesota state lines. There are no findings in the district court's order explaining how far M.M. and T.C.P. would need to travel to be outside the state of Minnesota, or how much time they would spend together when M.M. would leave school or her house in the middle of the night. T.C.P. lived in Fargo during the charged time frame and there is substantial testimony in the record showing that M.M. ran away to T.C.P.'s house in Fargo on a whim multiple times within the charged time frame. Under the heightened circumstantial evidence standard of review, we give no deference to the fact-finder's choice between reasonable inferences. *Silvernail*, 831 N.W.2d at 598-99. The circumstances proved support a reasonable inference that T.C.P. and M.M. engaged in sexual penetration in Becker County, Minnesota, however they also support a reasonable

---

[4] This is outside the charging timeframe in the juvenile petition and the state did not move to amend the juvenile petition.

inference that M.M. and T.C.P. were having sex in Fargo when they were having sex in T.C.P.'s car. We therefore conclude that the evidence is insufficient to prove beyond a reasonable doubt that T.C.P. was guilty of third-degree criminal sexual conduct.

In sum, because the circumstances proved are consistent with a reasonable inference other than guilt, which is that the sexual conduct did not occur in Minnesota during the charged timeframe, the evidence is insufficient as a matter of law to adjudicate T.C.P. guilty of third-degree criminal sexual conduct. For these reasons, we reverse.

**Reversed; motion denied.**