# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-1268

State of Minnesota,
Respondent,

vs.

Roald Dean Marth,
Appellant.

**Filed August 11, 2025**
**Affirmed; motion denied**
**Bratvold, Judge**

McLeod County District Court
File No. 43-CR-22-581

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Ryan S. Hansch, McLeod County Attorney, Michael K. Junge, Assistant County Attorney, Glencoe, Minnesota (for respondent)

Barry S. Edwards, Max A. Keller, Keller Law Offices, Minneapolis, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Bjorkman, Judge; and Harris, Judge.

## SYLLABUS

The value of property obtained is not an element of theft by swindle under Minn. Stat. § 609.52, subd. 2 (2014), but it determines the range of punishment under Minn. Stat. § 609.52, subd. 3 (2014).

# OPINION

**BRATVOLD**, Judge

In this appeal from a final judgment of conviction for theft by swindle, appellant Roald Dean Marth argues that the district court erred because (1) it determined that the value of the property obtained by swindle is not an element of the offense of theft by swindle; (2) it convicted him of misdemeanor theft by swindle as a lesser-included offense of felony theft by swindle, even though the jury was not instructed on the lesser offense; (3) the evidence is not sufficient to sustain his misdemeanor conviction; and (4) his due-process and fair-trial rights were violated because the state charged him with felony theft by swindle and he had no notice of the misdemeanor offense. Marth also moves to strike part of respondent State of Minnesota's brief.

Because the first two issues are related, we address them together. We conclude, first, that the value of the property obtained is not an element of theft by swindle, although it determines the range of punishment. Relatedly, because misdemeanor and felony theft by swindle have the same offense elements, the district court was not prohibited from convicting and sentencing Marth for a misdemeanor based on the jury's verdict. Second, the record evidence is sufficient to sustain Marth's conviction. And third, Marth had sufficient notice of the misdemeanor theft-by-swindle charge and the sentencing provision; therefore, the district court did not violate his due-process or fair-trial rights. Thus, we affirm. Because we consider only the record evidence in reaching our decision, we deny Marth's motion to strike the facts section of the state's brief.

**FACTS**

In April 2022, the state charged Marth with a single count of felony theft by swindle under Minn. Stat. § 609.52, subd. 2(a)(4), with reference to Minn. Stat § 609.52, subd. 3(1). An amended complaint alleged that Marth obtained J.C.'s property, valued at over $35,000, by "swindling, whether by artifice, trick, device, or [another] means," on or about December 10, 2015, to December 14, 2018; the amended complaint also asserted that J.C. gave Marth over $400,000 for a business that was never created and was not legitimate.

The district court conducted a jury trial starting in February 2024. The following summarizes the evidence received at trial and is stated favorably to the jury's verdict.[1]

---

[1] In support of his motion to strike, Marth argues that the state's statement of facts violates Minn. R. Civ. App. P. 128.03 because it "includes many statements that attribute actions and motivations to [Marth] that are unsupported by any citations to the record and are, at best, subject to dispute." Marth identifies six specific sentences that he alleges "are unsupported by any citations to the record." The state did not respond to the motion.

Marth is correct that these six statements fail to comply with the appellate rules because they lack specific citations to the record. *See* Minn. R. Civ. App. P. 128.02, subd. 1(c), 128.03(b) ("[T]he reference shall be made to the particular part of the record, suitably designated, and to the specific pages of it."). The contents of the record are defined as "[t]he documents filed in the trial court, the exhibits, and the transcript of proceedings, if any." Minn. R. Civ. App. P. 110.01.

Based on our review of the record and the other record citations in the state's brief, all but one of the six statements is supported by the record, so we limit our analysis of the motion to strike this single statement. Marth challenges the state's assertion that he "had no access to funds in his home state in Texas." The record does not establish that Marth lacked access to funds in Texas. But we need not grant Marth's request to strike this single sentence. "The general rule is that this court will not consider evidence outside the record." *State v. Breaux*, 620 N.W.2d 326, 334 (Minn. App. 2001). Because we consider only the record evidence in reaching our decision, we disregard the challenged assertion and deny Marth's motion to strike.

J.C. testified that she was 63 years old at the time of trial and got divorced in 2014. She is the 93% owner of a family business. In late 2015, when Marth entered the business to buy a gift for his mother, J.C. recognized him, although she had not seen him recently. Marth's father was a pastor at her church until 1976, when the Marth family moved away. That same day, Marth took J.C. out to dinner and asked her to "present a proposal" to her father to loan Marth $350,000 to start a company. Marth first said that the company would be called "True Freedom" but later changed the name to "LivLiv,"; he described the company as providing services for electric vehicles and their owners.

J.C. testified that, shortly after their dinner, she gave her father documents prepared by Marth and which J.C. had read in part. The documents included a letter, purportedly signed by Marth's father, that encouraged J.C.'s father to lend money to Marth and promised that the loan would be secured by a personal guarantee. Much later, Marth told J.C. that he wrote this letter and signed his father's name. Marth also admitted during his testimony that he wrote the letter.

J.C. testified that she told Marth that her father would not lend him the money. Still, J.C. and Marth continued to see each other. Marth sometimes stayed in J.C.'s home, and J.C. developed an "emotional relationship" with Marth that was not physically intimate. J.C. testified that Marth told her that his "father thought [she and Marth] should get married."

J.C. testified that, in December 2015, she gave Marth $10,000 and understood that she owned one million shares of the company and became a member of the board of directors. Marth told J.C. that "whatever money that [she] would loan to him would be

4

safe" because "he and his mother and his father, the pastor, would be backing that money." Later, J.C. gave Marth an additional $125,000 by liquidating some retirement funds, and J.C. eventually withdrew $218,926.47 from her retirement funds between January and March 2016.

J.C. also testified that Marth "took [her] to a Wells Fargo" to "open up a line of credit" and set up a "Visa Signature Card and a preferred checking account." Marth charged these credit accounts to their limit. At Marth's request, J.C. sought out a bank to extend her a home-equity loan to consolidate the credit-card debt. After speaking to one banker, J.C. reported the credit-card charges as fraudulent, but Marth convinced her to retract that report, reinstate the charges, and affirm his authority to use her credit cards. After meeting with a second bank, J.C. secured the home-equity loan used to pay off the credit-card debt of $120,000.

J.C. testified that she attended meetings with Marth to meet other investors and potential investors. At these meetings, the attendees reviewed "pitch decks" that described "the vision of the company." J.C. also continued to give money and property to Marth. For example, in 2018, J.C. bought an electric car for Marth to drive. By the end of 2018, J.C. reported Marth to the police, who instructed J.C. to "stop" contact with Marth; J.C. complied.

The state called several other witnesses, including law-enforcement officers, who offered evidence about financial records, and an employee at the bank that gave J.C. a home-equity loan.

5

Marth offered testimony from two business partners. One business partner agreed on cross-examination that "[t]here was no company" and no formal corporate entity. The second business partner testified and agreed that LivLiv was in its startup phase. He also agreed that there was not "a way to register with the Secretary of State" because there was no business "entity." Marth testified about his involvement in various business ventures. On cross-examination, Marth agreed that LivLiv did not have a board or board members and that J.C. "gave [him]" a total of about $400,000. When asked if it was an "investment" in LivLiv, Marth clarified that "there is no company." Marth's attorney argued during closing that there was no "business entity" because LivLiv was "in the startup phase."

Before the case was submitted to the jury, the parties disagreed about whether the jury should answer a special interrogatory. The prosecuting attorney argued that the jury should answer a special interrogatory on the guilty verdict form and determine whether the value of the property swindled was "more than $35,000" ($35,000 interrogatory). Marth disagreed and requested that the $35,000 interrogatory be submitted only "after a guilty verdict, if any, rather than included" on the guilty verdict form. Marth argued that including the $35,000 interrogatory on the guilty verdict form would "tend to push [the jury] towards a guilty verdict on the wrong subject." The prosecuting attorney responded that a separate special interrogatory form with the $35,000 interrogatory was "unnecessary." The prosecuting attorney urged that separate special interrogatory forms are usually used only when there is a second evidentiary phase of trial and that the jury needed no more evidence to answer the $35,000 interrogatory.

6

The district court overruled Marth's objection. The district court stated that the theft-by-swindle charge was "akin to some of the other types of charges that we sometimes see where there's those specific facts or issues as part of the elements like a certain amount of drugs or a certain amount of theft." The district court reasoned that including the $35,000 question on the guilty verdict form does not "push[] the jury in any direction" and is "just part of these components." The district court added that the jury instructions would explain the verdict forms and the $35,000 interrogatory.

Before closing arguments, the district court instructed the jury and included instructions about the special interrogatory. The district court explained: "If you find Mr. Marth guilty, then you have another issue to determine; was the value of the money more than $35,000. . . . If you unanimously find that fact has been proven beyond a reasonable doubt, the answer is yes. Otherwise, you must answer no."

Two hours into deliberations, the jury sent a written note to the district court, asking, "Do we have to agree on over or under $35,000?" The district court responded with a written note, saying, "Yes. All components of any verdict must be unanimous." The jury deliberated for another two hours and returned a verdict that found Marth guilty of theft by swindle. The jury checked "No" on the special interrogatory, which read, "We, the jury, find that the value of the money was more than $35,000."

7

Filed in District Court
State of Minnesota
Dated 2-23-24

STATE OF MINNESOTA            DISTRICT COURT

COUNTY OF MCLEOD            FIRST JUDICIAL DISTRICT

---

State of Minnesota,

         Plaintiff,

vs.

Roald Dean Marth,

         Defendant.

**VERDICT OF GUILTY**
**Theft by Swindle**

File No. 43-CR-22-581

---

We, the jury, find the defendant, Roald Dean Marth, **GUILTY** of the charge of Theft by Swindle, which occurred in McLeod County on or about December 10, 2015, through December 14, 2018.

We, the jury, find that the value of the money was more than $35,000.

☐ Yes      ☒ No

DATED: February 23, 2024

After an off-the-record discussion, the district court determined that "this verdict should be interpreted . . . as a misdemeanor, essentially, a lesser-included," and scheduled a sentencing hearing.

Before sentencing, Marth moved for a judgment of acquittal or, in the alternative, for a new trial. Marth argued that an acquittal was warranted because (1) "the jury's verdict

8

shows that the jury rejected the *corpus delicti* necessary for a conviction," urging that "the jury accepted the defense theory" that Marth sold J.C. "an actual interest" in "a legitimate business start-up"; (2) it was improper for the district court to convict Marth of a lesser-included offense because the state "did not ask for a lesser-included verdict"; (3) any conviction violated due process, the rule of lenity, and Minn. Stat. §§ 609.035, .04 (2014); and (4) the value of the property swindled was an element of the crime, not a sentencing consideration. The state opposed the motion.

After a hearing, the district court denied the motion for acquittal. In a memorandum attached to the written order, the district court reviewed the circumstantial evidence, found that it supported the jury's verdict, and concluded that "[t]he only reasonable inference from [the] circumstances proved is that [Marth] is guilty of theft by swindle." The district court also determined that the $35,000 interrogatory was properly given to the jury and that the value of the property obtained by Marth was not an element of the offense but affected Marth's sentence. The district court described as "inartful phrasing" its own earlier reference to value as an element.

The district court adjudicated Marth guilty of theft by swindle as a misdemeanor, sentenced him to 30 days in jail, and ordered him to pay a $500 fine.

Marth appeals.

### ISSUES

I.  Is the value of property taken an element of theft by swindle?

9

II.     Is the record evidence sufficient to sustain Marth's conviction?

III.    Did the district court violate Marth's due-process and fair-trial rights by convicting him of misdemeanor theft by swindle when he was charged with felony theft by swindle?

**ANALYSIS**

Marth raises four issues on appeal. The first two issues are related, and we consider them together.

**I.      The value of property obtained is not an element of theft by swindle.**

Marth argues that the district court erred by denying his motion for a judgment of acquittal because the jury's "No" answer to the special interrogatory on the verdict form rejected an essential element of the crime charged. He argues, as he did in his motion for a judgment of acquittal, that the "figure of $35,000" is an element of the crime rather than a sentencing factor or enhancement. On appeal, the state does not address this precise issue.[2]

In its order denying Marth's acquittal motion, the district court determined that the value of the property obtained is not an element of theft by swindle. The district court reasoned that "Minnesota law defines the crime of theft by swindle as occurring when someone obtains for himself the property of another by swindling, whether by artifice, trick, device, or any other means," and that the sentence for this crime depends on the value of the property or services obtained.

_____

[2] The state contends that Marth did not object to the special interrogatory on the guilty verdict form. We disagree. Marth preserved his objection to placing the $35,000 interrogatory on the guilty verdict form. But Marth seeks acquittal based on the jury's *answer* to the verdict form; he does not seek a new trial with a different verdict form, so the propriety of the verdict form is not before us.

This issue requires us to interpret the theft-by-swindle statute. Appellate courts review issues of statutory interpretation de novo. *State v. Stay*, 935 N.W.2d 428, 430 (Minn. 2019). The "objective in statutory interpretation is to effectuate the intent of the legislature." *Id.* (quotation omitted). "If the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and [appellate courts] apply the statute's plain meaning." *Id.* (quotation omitted); *see also* Minn. Stat. § 645.16 (2024) ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.").

Minnesota Statutes section 609.52, subdivision 2(a), sets out 19 separate acts as theft, one of which is theft by swindle. Minn. Stat. § 609.52, subd. 2(a). The relevant part of this statute reads: "Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3 . . . (4) by swindling, whether by artifice, trick, device, or any other means, obtains property or services from another person." *Id.*, subd. 2(a)(4).

Minnesota Statutes section 609.52, subdivision 3, permits the imposition of different sentences based on the value of the property or services obtained. As is relevant here, if "the value of the property or services stolen is more than $35,000" for a theft conviction, including theft by swindle, the defendant may be sentenced "to imprisonment for not more than 20 years or to payment of a fine of not more than $100,000, or both." *Id.*, subd. 3(1). By contrast, in cases of theft under section 609.52 "where the value of the property or services stolen is $500 or less," the defendant may be sentenced "to

11

imprisonment for not more than 90 days or to payment of a fine of not more than $1,000, or both." *Id.*, subd. 3(5). In other words, subdivision 3 authorizes a felony sentence if the value of the property obtained by swindle is more than $35,000, and it authorizes a misdemeanor sentence if the value of the property obtained by swindle is $500 or less. *See* Minn. Stat. § 609.02, subds. 2-3 (2014) (defining a felony as "a crime for which a sentence of imprisonment for one year or more may be imposed" and a misdemeanor as "a crime for which a sentence of not more than 90 days or a fine of not more than $1,000, or both, may be imposed").

The offense of theft by swindle has three elements: (1) the defendant obtained another's property (2) through "affirmative fraudulent or deceitful behavior" and (3) had "the intent to defraud." *State v. Flicek*, 657 N.W.2d 592, 597-98 (Minn. App. 2003). But there are no cases addressing whether the value of the property obtained by swindle is an element of the offense. Cases have discussed the value of property stolen, but without considering whether the value of the property stolen is an element of the offense.[3] *See State*

---

[3] Marth urges us to consider the supreme court's decision in *State v. McDonald* and appears to contend that it recognized that the value of stolen property is an element of the offense. 251 N.W.2d 705, 706-07 (Minn. 1977). We disagree with this view of *McDonald*, which does not mention the elements of theft. *Id. McDonald* reversed a conviction for theft of property and ordered a new trial because the district court refused McDonald's request to submit instructions on both the misdemeanor and felony offenses. *Id.* McDonald was found guilty of theft of property over $100 under the relevant version of Minn. Stat. § 609.52, subd. 2. *Id.* at 706. The record included conflicting evidence on the value of the property stolen—a power saw and a cordless electric screwdriver—with values ranging from $75 to $1009. *Id.* The supreme court recognized that the district court has "considerable discretion" on this issue, but ordered a new trial after determining that McDonald was prejudiced "in the circumstances of this case where the critical finding of market value is so very close." *Id.* at 707.

12

*v. Matousek*, 178 N.W.2d 604, 606, 609-10 (Minn. 1970) (concluding the evidence was sufficient to sustain a conviction for theft of a car under the relevant version of Minn. Stat. § 609.52, subd. 2, based on the "value element" without addressing whether the element related to the offense or the sentence); *State v. Dircks*, No. A11-2011, 2012 WL 6097124, at *4 (Minn. App. Dec. 10, 2012) (concluding the evidence was sufficient to sustain a conviction for theft by swindle when the district court instructed the jury that the "elements of theft by swindle" included that "the amount taken was over $1,000"), *rev. denied* (Minn. Feb. 27, 2013).[4]

By contrast, the Minnesota Supreme Court in *State v. Lone* stated that the value of the property obtained is "irrelevant." 361 N.W.2d 854, 860 (Minn. 1985). In *Lone*, the supreme court affirmed a theft-by-swindle conviction based on evidence that Lone made false representations to consumers about a basement-waterproofing service. *Id.* at 855-56, 861. Lone challenged the district court's rejection of his requested jury instruction that would have required the jury to consider whether the victims received something of value,

---

We conclude that *McDonald* has no bearing on the issues raised in this appeal for two reasons. First, Marth did not request any instructions on misdemeanor theft by swindle, nor did he offer evidence disputing the value of the property obtained from J.C., arguing instead that he did not obtain the funds by swindle. Second, in stark contrast to the record in *McDonald*, the record evidence here does not suggest that the value of the property obtained was "close." On appeal, Marth concedes that J.C. "gave [him] approximately $400,000."

[4] "[N]onprecedential opinions are not binding authority but may be cited as persuasive authority." *State v. Monyak*, 14 N.W.3d 210, 215 n.2 (Minn. App. 2024) (quotation omitted). We conclude that *Dircks* is not persuasive on this issue because it assessed sufficiency of the evidence and assumed, without affirmatively deciding, that the value of the property obtained is an element of theft by swindle. 2012 WL 6097124, at *4.

13

arguing that the waterproofing improved the properties. *Id.* at 857. The supreme court concluded that, "[i]n theft by swindle, value becomes irrelevant" and the real issue is whether "the victims were cheated" through a misrepresentation. *Id.* at 860. As in *Matousek*, however, the supreme court did not analyze the theft-by-swindle statute in determining the sufficiency of the evidence; nor did it specifically rule on the elements of theft by swindle. *Id.* at 857-60;[5] *see also State v. Saybolt*, 461 N.W.2d 729, 733-34, 738 (Minn. App. 1990) (applying *Lone* and affirming a conviction for theft by swindle when the record evidence on value conflicted, reasoning that "[t]he value of that property is determinative of the degree of the offense, not whether the offense actually took place"), *rev. denied* (Minn. Dec. 17, 1990).

We are persuaded by the reasoning in our nonprecedential opinion, *State v. Griffin*, which ruled that the value of the "movable property" stolen "from the person of another"— a theft offense distinct from theft by swindle but part of section 609.52—was "not an element required to establish guilt of theft." No. A11-0316, 2012 WL 171382, at *3 (Minn. App. Jan. 23, 2012).[6] Griffin contended that the value of the property stolen was an offense

---

[5] Marth cites caselaw stating that the value of property obtained is an element of offenses other than theft. In *State v. Biehoffer*, the supreme court characterized the value of the stolen property as "an essential element of first-degree grand larceny" under Minn. Stat. § 622.05 (1961). 129 N.W.2d 918, 924, 926 (Minn. 1964). Similarly, in *Carter v. United States*, the United States Supreme Court determined that a "valuation requirement is an element" of federal bank robbery under 18 U.S.C. § 2113(b) (Supp. IV 1998). 530 U.S. 255, 258-59, 273 (2000). Because these cases involved statutes and offenses other than theft by swindle under Minn. Stat. § 609.52, subd. 2(a)(4), they do not inform our analysis.

[6] In *Griffin,* this court's analysis was based on Minn. Stat. § 609.52, subds. 2-3 (2010). *Id.* at *2-3. The relevant portions of Minn. Stat. § 609.52 are materially similar in the 2010 and 2014 versions. *Compare* Minn. Stat. § 609.52 (2010), *with* Minn. Stat. § 609.52 (2014).

14

element and urged that "the district court's failure to submit the issue to the jury warrants reversal of his conviction." *Id.* at *2. We disagreed and affirmed Griffin's conviction after examining the statutory language of subdivision 2 and subdivision 3, concluding that "value is an element necessary to determine the severity of the sentence." *Id.* at *2-3.[7]

We agree with the reasoning in *Griffin* and conclude that theft by swindle has three elements, none of which are the value of the property obtained. First, a defendant must "obtain[] property or services from another person." Minn. Stat. § 609.52, subd. 2(a)(4). Second, a defendant must engage in a swindle "by artifice, trick, device, or any other means" through "affirmative fraudulent or deceitful behavior." *Id.*; *Flicek*, 657 N.W.2d at 598. And third, the defendant must have an "intent to defraud." *Flicek*, 657 N.W.2d at 598. The three elements of theft by swindle are set out in subdivision 2, while the punishment for theft by swindle is set out in subdivision 3, as stated at the outset of subdivision 2(a). This conclusion is also supported by *Flicek*, in which this court assessed the elements of theft by swindle and did not discuss value. *Id.* Therefore, although the value of the property obtained must be proved beyond a reasonable doubt for sentencing purposes, it is not an element of the offense of theft by swindle.

Because the value of the property obtained is not an element of the offense of theft by swindle, we also conclude that felony and misdemeanor theft by swindle have the same

---

[7] *See also State v. Boyce*, No. A06-2050, 2007 WL 3153017, at *4 (Minn. App. Oct. 30, 2007) (reasoning that "Minn. Stat. § 609.52, subd. 2, defines acts that constitute theft, and Minn. Stat. § 609.52, subd. 3, prescribes the punishment for persons who commit theft" and that these "punishments vary depending on factors such as the value of the property that is taken"), *rev. denied* (Minn. Jan. 15, 2008).

15

three elements and therefore that neither is a lesser degree of the other, as Marth contends. Marth argues that the district court erred by convicting him of misdemeanor theft by swindle rather than entering a judgment of acquittal when the jury determined that the value of the property was not greater than $35,000. Marth relies on Minn. Stat. § 609.04, subd. 2 (2014), which provides that "[a] conviction or acquittal of a crime is a bar to further prosecution of any included offense, or other degree of the same crime." Marth suggests that double jeopardy precludes his conviction and maintains that "having been acquitted of the greater offense, therefore, [Marth] cannot be convicted for a misdemeanor version thereof." Because the value of the property swindled is not an element of the offense of theft by swindle, we disagree and conclude that misdemeanor theft by swindle is not a lesser degree of felony theft by swindle—it is simply the crime of theft by swindle. And the jury's "No" response to the $35,000 interrogatory means Marth's offense was sentenced as a misdemeanor instead of as a felony.

## II.     The record evidence is sufficient to sustain Marth's conviction.

Marth argues that the record evidence does not support his conviction for misdemeanor theft by swindle. Appellate courts evaluating the sufficiency of evidence must "carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). Appellate courts view the evidence "in the light most favorable to the verdict" and assume "that the fact-finder disbelieved any evidence that conflicted with the verdict." *Id.* "The verdict will

16

not be overturned if the fact-finder, upon application of the presumption of innocence and the State's burden of proving an offense beyond a reasonable doubt, could reasonably have found the defendant guilty of the charged offense." *Id.*

We apply different standards for determining the sufficiency of the evidence depending on whether the conviction is based on direct or circumstantial evidence. *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017). Direct evidence "is based on personal knowledge or observation and . . . , if true, proves a fact without inference or presumption," while circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* (quotations omitted). In other words, "circumstantial evidence always requires an inferential step to prove a fact that is not required with direct evidence." *Id.* When an element of an offense is supported by both direct and circumstantial evidence and the direct evidence of guilt is not sufficient to prove the element beyond a reasonable doubt, we apply the circumstantial-evidence test. *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017).

When reviewing the sufficiency of circumstantial evidence to sustain a conviction, appellate courts follow a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013). First, appellate courts "identify the circumstances proved," deferring "to the jury's acceptance of the proof of these circumstances" and rejecting "evidence in the record that conflicted with the circumstances proved by the State." *Id.* (quotations omitted). Second, appellate courts "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 599 (quotations omitted).

17

As discussed above, to sustain his conviction for theft by swindle, the state must have proved beyond a reasonable doubt that Marth (1) obtained another's property (2) through "affirmative fraudulent or deceitful behavior" and (3) had "the intent to defraud." *Flicek*, 657 N.W.2d at 598. On appeal, Marth acknowledges that he obtained J.C.'s property, effectively conceding the first element. We understand Marth to challenge the second and third elements. Some of the state's evidence for the second element required "an inferential step" to determine that Marth's actions were fraudulent or deceitful. *Harris*, 895 N.W.2d at 599. The third element—intent—was supported by circumstantial evidence because it also involved drawing inferences about Marth's state of mind. *See State v. Ferrier*, 792 N.W.2d 98, 101 (Minn. App. 2010) ("[I]ntent generally must be proved by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." (quotation omitted)), *rev. denied* (Minn. Mar. 15, 2011). Thus, we apply the circumstantial-evidence test.

The circumstances proved by the state at trial showed that Marth asked J.C. to help him get a loan from her father for Marth's new business and that Marth supported his request for a loan with a false document and promises of a loan guarantee. When J.C.'s father declined to make the loan, Marth asked J.C. to give him money in exchange for stock in the business and becoming a board member. After J.C. gave money to Marth, he referred to J.C. as a board member. Over at least two years, Marth obtained money, credit, and property from J.C. totaling about $400,000 and used J.C.'s money for various expenses, but he never established a new business. Because there was no business entity, no stock and no board of directors existed.

Under the second step, we conclude that the circumstances proved are consistent with the jury's guilty verdict and inconsistent with any reasonable hypothesis of innocence. The circumstances proved showed that Marth obtained money, credit, and property from J.C. by false representations or deceit, including his statements that J.C. was a board member even though no corporate entity was created and no board led the fictional corporation. The same evidence supports the jury's reasonable inference that Marth intended to defraud J.C. when he took her money, credit, and property while falsely representing that a business existed. The supreme court reviewed a similar conviction and misrepresentation and upheld the evidence as sufficient to prove theft by swindle because it showed fraudulent or deceitful behavior and the intent to defraud. *Lone*, 361 N.W.2d at 855, 858, 861 (affirming a theft-by-swindle conviction based on the appellant's misrepresentations to homeowners that their basements had structural damage that could be corrected by waterproofing with the appellant's system when the state's evidence showed the system was "useless in protecting against structural damage" and "had no value as a waterproofing agent").

Marth contends that the jury determined that "at least $365,000 was intelligently invested in a legitimate business enterprise" and "rejected the idea of a fraudulent business scheme" because the state alleged that Marth swindled $400,000 and "the jury found that

19

less than $35,000 was stolen." Marth accordingly presents an alternative hypothesis that he obtained money and credit from J.C. to advance a legitimate business enterprise.[8]

Marth's alternative hypothesis fails because it credits evidence rejected by the jury and is inconsistent with the circumstances proved. The jury found that Marth was guilty of theft by swindle and that the value of the money taken was not more than $35,000. Therefore, the jury determined that Marth obtained J.C.'s money, credit, and property by swindle rather than for a legitimate business enterprise. Marth and his business partners testified that "[t]here was no company" or board, even though Marth held J.C. out as a board member. The circumstances proved are inconsistent with any rational hypothesis other than Marth's guilt.

Marth also argues that the record evidence does not support a conviction for swindling "*any* amount even a penny" because the jury found that the value of the property swindled was "not more than $35,000." He argues that "assigning any monetary value" to the jury's verdict "violates both *Blakely* and *Apprendi* which jointly hold that a jury must find all facts that constitute a statutory offense." *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[9]

---

[8] Marth provides additional hypotheses relating to the type or amount of property swindled. Because the value of the property swindled is not an element of the crime of theft by swindle, they are not reasonable alternative hypotheses that are inconsistent with guilt.

[9] In *Apprendi*, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. This was reiterated in *Blakely*, in which the Supreme Court reasoned, "As *Apprendi* held, every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment." 542 U.S. at 313.

This is not persuasive for two reasons. First, as explained above, the value of the property obtained is not an element of theft by swindle, but rather a fact relevant to sentencing. Second, as directed by the special interrogatory, the jury found that the value of the property obtained was *not* "more than $35,000." The district court convicted Marth of misdemeanor theft by swindle, which requires that the value of the property obtained be $500 or less. Minn. Stat. § 609.52, subd. 3(5).[10] In other words, a misdemeanor sentence is authorized if the value of the property swindled is $500 or less. Thus, the jury's finding that the value of J.C.'s swindled property was not "more than $35,000" satisfied the property-value requirement for misdemeanor punishment under this subdivision. *Id.*

Thus, the circumstantial evidence sustains the jury's verdict that Marth is guilty of theft by swindle.

**III.     The district court did not violate Marth's due-process or fair-trial rights by convicting him of misdemeanor theft by swindle.**

Criminal defendants are entitled to due process of law and a fair trial before a jury. U.S. Const. amends. XIV, § 1, VI; Minn. Const. art. I, §§ 4, 7. Parties have a constitutional right to "be informed of the nature and cause of the accusation" against them, which is "satisfied if an indictment contains such descriptions of the offense charged as will enable a defendant to make his defense and to plead the judgment in bar of any further prosecution

---

[10] Marth also argues that the misdemeanor conviction violates the rule of lenity, which "requires that [appellate courts] construe a statute against strict criminal liability." *State v. Al-Naseer*, 734 N.W.2d 679, 685 (Minn. 2007). The jury was charged on all three elements of theft by swindle and found Marth guilty, which means it determined that he obtained another's property by swindle. *See* Minn. Stat. § 609.52, subd. 2(a)(4). The district court also sentenced Marth for a misdemeanor as authorized by the jury's verdict and statute. *See id.*, subd. 3(5). Lenity does not apply in this context.

21

of the same crime." *State v. Kendell*, 723 N.W.2d 597, 611 (Minn. 2006) (quotations omitted). Marth argues that the district court violated his due-process and fair-trial rights by convicting him of misdemeanor theft by swindle without notice. Whether the government has violated an appellant's procedural due-process or fair-trial rights are constitutional questions of law that appellate courts review de novo. *State v. Rey*, 905 N.W.2d 490, 494 (Minn. 2018) (procedural due process); *State v. Dorsey*, 701 N.W.2d 238, 249 (Minn. 2005) (fair trial).

Marth emphasizes that the state charged him with one count—felony theft by swindle—and that neither party requested an instruction on misdemeanor theft by swindle. The state counters that Marth's due-process and fair-trial rights were not violated because the state's evidence at trial closely adhered to the amended complaint's allegations and Marth, therefore, "had sufficient information to prepare and argue his defense."

Marth is correct that the state charged him under Minn. Stat. § 609.52, subd. 2(a)(4), which gave him notice of the theft-by-swindle charge. The amended complaint also referred to subdivision 3, which gave him notice of sentencing based on the value of the property obtained. Minn. Stat. § 609.52, subd. 3. The state's amended complaint alleged facts supporting the charge.

We look to the probable-cause statement, which alleged: Marth and J.C. "had grown up together." Marth asked J.C. "to invest in a company called LivLiv" and gave her literature "to show her the safety of the investments." After giving Marth money to invest in LivLiv, J.C. believed she was "a member of the board of directors." The state's investigation "was unable to locate any business records associated with LivLiv,"

22

determined that J.C. had given Marth "at least $409,487.04," and concluded that the funds Marth obtained from J.C. were not used "for business expenses related to LivLiv or any legitimate business."

And, as detailed above, the evidence offered at trial aligned with the facts alleged in the amended complaint. The jury was charged and instructed on the three elements of theft by swindle. The verdict forms allowed the jury to determine whether Marth was guilty or not guilty of theft by swindle and, if the jury found Marth guilty, instructed it to indicate whether the value of the property obtained by swindle was over $35,000. Marth did not object to the jury instructions. Marth's objection to the special interrogatory urged that there should be a second phase of jury instructions before sentencing. Indeed, Marth's argument to the district court on the special interrogatory appeared to recognize that the value of the property obtained by swindle was relevant only as to sentencing and not as to Marth's guilt.

We conclude, therefore, that the amended complaint gave Marth sufficient notice of the charged offense and that the value of the property obtained by swindle was a fact bearing on his sentence. *See Saybolt*, 461 N.W.2d at 737-38 (affirming conviction for theft by swindle and rejecting a due-process challenge when the complaint gave the appellant "sufficient information and opportunity to prepare and argue his defense"). Thus, Marth was not denied his right to due process or to a fair trial.

## DECISION

We reject each of the arguments raised by Marth. First, the value of the property obtained is not an element of the offense of theft by swindle under Minn. Stat. § 609.52,

23

subd. 2(a)(4), but determines the range of punishment under Minn. Stat. § 609.52, subd. 3. Also, misdemeanor and felony theft by swindle have the same offense elements, so the district court was not prevented from convicting and sentencing Marth for a misdemeanor based on the jury's verdict. Second, the circumstantial evidence received during trial is sufficient to sustain Marth's misdemeanor conviction for theft by swindle. Third, the district court did not violate Marth's due-process or fair-trial rights because he had notice of the charge submitted to the jury and that the value of the property obtained would be determined by the jury. Thus, we affirm. Because we consider only the record evidence in reaching our decision, we deny Marth's motion to strike.

**Affirmed; motion denied.**